748 So.2d 1239 (1999)
STATE of LOUISIANA, Appellee,
v.
Lester Charles BALL, Appellant.
No. 32497-KA.
Court of Appeal of Louisiana, Second Circuit.
December 15, 1999.
*1241 Peggy J. Sullivan, Louisiana Appellate Project, Counsel for Appellant.
Richard Ieyoub, Attorney General, Paul J. Carmouche, District Attorney, Bruce Dorris, Tommy J. Johnson, Assistant District Attorneys, Counsel for Appellee.
Before NORRIS, GASKINS and DREW, JJ.
GASKINS, J.
The defendant, Lester Charles Ball, was convicted as charged of first degree robbery. He was subsequently adjudicated a third felony offender and sentenced to life imprisonment. The defendant appeals. We affirm his conviction and sentence.[1]

FACTS
On July 20, 1995, Cheryl Fitzgerald and her husband came to Shreveport to visit the local casinos. Although they had checked into the Days Inn on Monkhouse Drive in anticipation of spending the night, they decided to return to their home in Texas that evening. At about 10:00 p.m., Mr. Fitzgerald went up to their room to retrieve their luggage while Mrs. Fitzgerald waited in the passenger seat of their 1995 Blazer. A black male wearing a white shirt, blue jean shorts and white tennis shoes got in the driver's seat of the Blazer and ordered Mrs. Fitzgerald out of the vehicle and told her to leave her purse. According to Mrs. Fitzgerald, the man pressed what she believed to be a gun to her arm. She jumped out of the Blazer and began to scream for her husband as the robber sped off in the Blazer. As the Blazer was driven off the motel parking lot, it almost struck security guard Harold Wilson, who briefly observed the driver as he tried to flag down the speeding vehicle.
Officer Jeffrey Peters of the Shreveport Police Department was patrolling the area around the Days Inn when he heard a *1242 woman screaming. He then observed the Blazer as it sped out of the parking lot onto Monkhouse Drive. Officer Peters gave pursuit and followed the Blazer as it ran a stop sign and two red lights before getting onto 1-20 heading east. Officer Peters radioed for assistance.
The Blazer pulled over and stopped on the shoulder of the interstate. The driver fled the vehicle through the passenger door. Officer Peters pursued the man on foot, training his flashlight on him and ordering him to stop. At one point, the officer saw the man throw a purse to the ground as he ran.[2] Responding to Officer Peters' call for assistance, Officer Dwight Martin joined the foot pursuit. He cut off the fleeing robber as he went over a fence in a residential back yard and ordered him to the ground. The manthe defendant complied and was placed under arrest.
The Fitzgeralds were transported to the location of the Blazer; Officer Peters, who had returned to that site, asked them to examine their vehicle for damage and ascertain if anything was missing. Meanwhile, Officer Paul Robinson determined that the motel security guard, Mr. Wilson, had observed the fleeing Blazer and its driver.
Because the defendant's arrest occurred in a high crime area, the police removed him from the neighborhood and transported him to the corner of Broadway and Greenwood. Mrs. Fitzgerald was taken to this location and allowed to see the defendant. She immediately identified him as the man who robbed her. Mr. Wilson was also driven to the defendant's location; he positively identified the defendant as the driver who almost ran him down.
The defendant was charged with the first degree robbery of Mrs. Fitzgerald. Following a jury trial, he was convicted as charged on March 1, 1996. In August 1996, he was adjudged a second felony offender. In June 1997, his motions for new trial and for post verdict judgment of acquittal were denied. In July 1997, he was sentenced as a second felony offender to 30 years at hard labor without benefit.
Subsequently, the state learned that the defendant had another prior felony conviction, a 1993 conviction for access device fraud from Jefferson Parish. It consequently filed a third felony habitual offender bill of information in September 1998. On November 13, 1998, the defendant was adjudicated a third felony offender and sentenced to life imprisonment without benefit.[3]
The defendant appeals his conviction and sentence.

SUFFICIENCY OF EVIDENCE
In two assignments of error, the defendant claims that the evidence adduced at trial was insufficient to support his conviction for first degree robbery. Specifically, the defendant argues that while Mrs. Fitzgerald and Mr. Wilson positively identified him as the robber, they only viewed the robber for seconds. Additionally, he asserts that there were irreconcilable contradictions between Mrs. Fitzgerald's description of the robber and Officer Peters' description of the defendant when he was arrested. Mrs. Fitzgerald testified that the robber was wearing a shirt with a hood and jewelry and that he pulled a gun on her. Officer Peters testified that he did not recall the defendant wearing any jewelry and that the defendant's shirt had no hood. Also, no object was found on the defendant's person which could be construed as a gun.
When issues are raised on appeal both as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. The reason for reviewing *1243 sufficiency first is that the accused may be entitled to an acquittal under Hudson v. Louisiana, 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981), if a rational trier of fact, viewing the evidence in accord with Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), in the light most favorable to the prosecution, could not reasonably conclude that all of the elements of the offense have been proved beyond a reasonable doubt. State v. Hearold, 603 So.2d 731 (La.1992); State v. Bosley, 29,253 (La.App.2d Cir.4/2/97), 691 So.2d 347, writ denied, 97-1203 (La.10/17/97), 701 So.2d 1333.
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La.1983); State v. Owens, 30,903 (La. App.2d Cir.9/25/98), 719 So.2d 610, writ denied, 98-2723 (La.2/5/99), 737 So.2d 747.
A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Rogers, 494 So.2d 1251 (La.App. 2d Cir.1986), writ denied, 499 So.2d 83 (La.1987). In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. Thomas, 30,490 (La. App.2d Cir.4/8/98), 711 So.2d 808, writ denied, 99-0331 (La.7/2/99), 747 So.2d 8, 1999 WL 510983.
In cases involving a defendant's claim that he was not the person who committed the crime, the Jackson rationale requires the state to negate any reasonable probability of misidentification in order to carry its burden of proof. State v. Brady, 414 So.2d 364 (La.1982); State v. Baker, 28,152 (La.App.2d Cir.5/8/96), 674 So.2d 1108, writ denied, 96-1909 (La.12/6/96), 684 So.2d 925.
First degree robbery is defined in La. R.S. 14:64.1, as "the taking of anything of value belonging to another from the person of another, or that is in the immediate control of another, by use of force or intimidation, when the offender leads the victim to reasonably believe he is armed with a dangerous weapon."
In the instant matter, it is clear that the jury chose to believe the testimony of the prosecution's witnesses. Mrs. Fitzgerald testified that she sat alone in the passenger's seat of her Blazer waiting for her husband to return with their luggage. When she heard the driver's door open, she assumed that her husband had returned. Instead, a stranger entered the vehicle and pressed a hard, pointed object into her arm. She assumed that this man was going to shoot her and steal her car. She testified that she looked the robber straight in the face so she could identify him again if called upon to do so.
Alerted by Mrs. Fitzgerald's screams, Officer Peters began to follow the Fitzgeralds' Blazer as soon as it left the Days Inn; he maintained visual contact with the Blazer and the robber until the defendant was apprehended by Officer Martin. Officer Peters testified that the defendant was the person he saw driving the Blazer, pulling the vehicle over to the side of the road, getting out of the passenger side door and running into the neighborhood. Officer Peters continued the foot pursuit of the defendant, with the defendant in sight for all but a few seconds as he rounded a corner, until he was apprehended by Officer Martin.
Officer Martin followed the progress of the chase via Officer Peters' radio reports. Officer Peters provided a description of the suspect along with updates on his location. Officer Martin positively identified *1244 the defendant as the person he apprehended.
Finally, both Mrs. Fitzgerald and Mr. Wilson, the security guard at the Days Inn who also saw the robber, were able to positively identify the defendant both at the scene, as well as during the trial of this matter. The jury obviously dismissed the testimony of the defendant's alibi witness as incredible.[4] This court will not disturb the credibility call made by the jury. State v. Mussall, 523 So.2d 1305 (La.1988); State v. Ford, 28,724 (La. App.2d Cir.10/30/96), 682 So.2d 847, writ denied, 99-0210 (La.5/14/99), 745 So.2d 12.
Viewing the evidence in the light most favorable to the prosecution, a rational juror could have found that the defendant committed the offense of first degree robbery based on the testimony of Mrs. Fitzgerald, Mr. Wilson, Officer Peters and Officer Martin. Thus, the evidence was sufficient under Jackson v. Virginia, supra, to find that the defendant committed the offense of first degree robbery. This assignment of error is without merit.

SUGGESTIVE IDENTIFICATION
The defendant contends that the trial court erred in denying his motion to suppress the identifications of him made by Mrs. Fitzgerald and Mr. Wilson as unduly suggestive. The defendant argues that he was handcuffed at the time Mrs. Fitzgerald identified him and she was not shown another possible suspect. The defendant further argues that at the time he was standing beside a police unit with the lights shining on him and Mrs. Fitzgerald was told that the police had the suspect and that he had been caught in her vehicle. The defendant also argues that Mr. Wilson identified him under the same circumstances as Mrs. Fitzgerald. The defendant contends that both sides stipulated that the witnesses saw the suspect for only five to ten seconds. The defendant argues that there was no reason not to conduct a line-up with more than one suspect to choose from.
Fairness is the standard of review for identification procedures, and reliability is the linchpin in determining the admissibility of identification testimony. Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977). It is the defendant's burden, when challenging an identification procedure, to show that there was a substantial likelihood of misidentification as a result of said procedure. State v. Prudholm, 446 So.2d 729 (La. 1984).
One-on-one confrontations between a suspect and a victim, while not favored by the law, are permissible when justified by the overall circumstances. Such identification procedures are generally permitted where the accused is apprehended within a short time after the commission of the offense and is returned to the scene of the crime for on-the-spot identification or when the identification is made shortly after the commission of the crime. State v. Dauzat, 364 So.2d 1000 (La.1978); State v. Patrick, 31,380 (La.App.2d Cir.10/28/98), 721 So.2d 94, writ denied, 98-2957 (La.3/19/99), 739 So.2d 780; State v. Cotton, 511 So.2d 1207 (La.App. 2d Cir.1987). Such a prompt identification, under appropriate circumstances, promotes accuracy as well as expediting the release of innocent suspects. State v. Williams, 420 So.2d 1116 (La.1982); State v. Cotton, supra.
In Manson v. Brathwaite, supra, the United States Supreme Court set out five *1245 factors to be considered in determining whether an identification gave rise to a substantial likelihood of misidentification:
1) The witness's opportunity to view the criminal at the time of the crime;
2) The degree of attention paid by the witness during the commission of the crime;
3) The accuracy of any prior description;
4) The level of certainty demonstrated at confrontation; and
5) The time between the crime and the confrontation.
See also State v. Martin, 595 So.2d 592 (La.1992), holding that when reviewing a trial court's ruling on a motion to suppress, a reviewing court will consider the entire record, including the testimony presented at trial.
The Manson factors were met in the instant case. Mrs. Fitzgerald stated that she clearly observed the defendant's facial features and his clothing during the period of time, between 15 to 30 seconds, that they were in the car together. Mr. Wilson also stated that he had ample time to view the defendant when he drove up to and past him in the parking lot. The descriptions given by Mrs. Fitzgerald and by Mr. Wilson matched the defendant. Each was certain that the person they identified that evening was the person that stole Mrs. Fitzgerald's automobile. Finally, very little time elapsed between the time that the vehicle was stolen and the time that Mrs. Fitzgerald and Mr. Wilson viewed the defendant.
This assignment of error is without merit.

BATSON CHALLENGE
In two assignments of error, the defendant complains of the trial court's actions in following the instructions of this court after the state successfully challenged the defense's exclusion of a prospective juror.
During voir dire, the state objected pursuant to Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), to the discriminatory manner in which the defendant was exercising his peremptory challenges. The trial court found that the state had made a prima facie showing of discrimination and requested that the defendant, a black male, state racially neutral explanations for the exercise of his strikes against several white prospective jurors, including Robert Cowgill.
The defendant's initial explanation for excusing Mr. Cowgill was that he believed that he might be pro-prosecution. After the trial court found that reason was insufficient, the defendant then expressed concern that the case might not receive Mr. Cowgill's full attention because of his work.[5] The court again stated that there was "not any reason to exclude Mr. Cowgill." Then the trial court observed that the defense's reasons were "really marginal" and "[awfully] weak" in general and "really close" on Mr. Cowgill in particular. However, the trial court, with great reluctance, denied the state's motion, conceding that it was "probably" committing error, and the peremptory challenges were allowed to be exercised.
The state applied for writs to this court. We granted a stay in the trial while the second witness for the state was still on direct examination. This court granted the writ, reversing and vacating the trial court's ruling as to Mr. Cowgill. To comply with the appellate court ruling that Mr. Cowgill be seated on the jury, the trial court began the trial anew.[6]
The defendant argues that the trial court did not abuse its discretion in finding that his reasons for exercising a peremptory *1246 strike against Mr. Cowgill were race neutral. The defendant cites State v. Rose, 606 So.2d 845 (La.App. 2d Cir.1992), in which this court stated that a prospective juror's perceived lack of concentration is a racially neutral reason for the exercise of a peremptory challenge. The defendant further argues that it is not necessary that he prove that Mr. Cowgill was incapable of fully concentrating on the case or that he was pro-prosecution. The defendant also argues that the first jury in this case was not illegally empaneled, therefore it should not have been dismissed. Thus, the defendant argues, his motion to quash based on double jeopardy should have been granted.
The Batson holding is codified in our law as La.C.Cr.P. art. 795(C) which provides:
C. No peremptory challenge made by the state or the defendant shall be based solely upon the race of the juror. If an objection is made that the state or the defense has excluded a juror solely on the basis of race, and a prima facie case supporting that objection is made by the objecting party, the court may demand a satisfactory racially neutral reason for the exercise of the challenge, unless the court is satisfied that such reason is apparent from voir dire examination of the juror. Such demand and disclosure, if required by the court, shall be made outside of the hearing of any juror or prospective juror.
To make a Batson claim against the defendant, the state must first establish a prima facie case that the defendant exercised his peremptory challenges to exclude members of the jury venire solely on the basis of their cognizable race. Batson, supra; State v. Green, 655 So.2d 272 (La. 1995); State v. Jackson, 29,470 (La.App.2d Cir.8/20/97), 707 So.2d 990.
Once the state establishes a prima facie case, the burden shifts to the defendant to come forward with a raceneutral explanation. This second step of the process does not demand an explanation from the defendant that is persuasive, or even plausible. The reason offered by the defendant will be deemed race-neutral unless a discriminatory intent is inherent within that explanation. The persuasiveness of the defendant's explanation only becomes relevant at the third and final step which is when the trial court must decide whether the state has proved purposeful discrimination. Thus, the ultimate burden of persuasion as to racial motivation rests with, and never shifts from, the opponent of the peremptory challenge. Purkett v. Elem, 514 U.S. 765, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995); Hernandez v. New York, 500 U.S. 352, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991); Batson, supra; State v. Green, supra; State v. Jackson, supra. When a trial court demands that the defendant explain his exercise of a peremptory challenge, it is tantamount to a finding that the state has produced enough evidence to support an inference of discriminatory intent. State v. Green, supra.
Our original ruling on this issue in this case was as follows:
WRIT GRANTED AND MADE PEREMPTORY. STAY ORDER VACATED.
The trial court has great discretion in accepting or rejecting the explanation of the party who uses peremptory challenges. Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986); Georgia v. McCollum, 505 U.S. 42, 112 S.Ct. 2348, 120 L.Ed.2d 33 (1992); State v. Powell, 598 So.2d 454, 461 (La.App. 2d Cir.), writ denied 605 So.2d 1089 (1992); State v. Ford, 26,422 [La.App.2d Cir. 9/21/94], 643 So.2d 293.
Here, the trial court made a finding of a prima facie showing of purposeful racial discrimination and requested race-neutral explanations for the use of peremptory challenges. We find no error in the trial court rulings as to potential jurors Smith, Wackerl, Rice and Gray.
However, our examination of the transcript of voir dire examination of the potential juror Cowgill shows that the trial court erred in concluding that the *1247 defense counsel offered clear, race-neutral, reasonably specific reasons related to the case at bar for exercising its peremptory challenge to exclude this person from jury service. The trial court ruling granting the peremptory challenge as to Cowgill is reversed and vacated. The stay order previously issued is hereby vacated and the matter is remanded for further proceedings.
We find that the original ruling of this court was well-founded. Inasmuch as the original jury was illegally empaneled and thus improperly sworn, the defendant has no double jeopardy complaint as a result of the correction of that problem. We see no reason to revisit the issue now. Accordingly, this assignment of error lacks merit.

HEARSAY EVIDENCE
In this assignment of error, the defendant complains that the trial court erred in denying his hearsay objections during the testimony of Officer Robinson and Officer Peters as each testified as to what was related to them by, respectively, Mr. Wilson and Mrs. Fitzgerald. The defendant argues that the state was allowed to bolster the testimony of both Mr. Wilson and Mrs. Fitzgerald with inadmissible evidence.
The state argues that the statements made by Officers Robinson and Peters were not hearsay, but were instead admissible pursuant to La. C.E. art. 801(D)(1)(b) which provides in pertinent part:
D. Statements which are not hearsay. A statement is not hearsay if:
(1) Prior statement by witness. The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is:
. . . .
(b) Consistent with his testimony and is offered to rebut an express or implied charge against him of recent fabrication or improper influence or motive[.]
A review of the cross-examination testimony of both Mr. Wilson and Mrs. Fitzgerald, who each testified prior to the respective officer that gave testimony about their statements, demonstrates a clear intent to imply some sort of fabrication on the witness' part. Thus, allowing the officers to testify concerning the witnesses' statements at the time of the incident in question was not error. Instead, it allowed the state to buttress the questioned testimony of the eyewitnesses in this matter.
This assignment of error is meritless.

TIMING OF THIRD FELONY OFFENDER ADJUDICATION
By this assignment of error, the defendant contends that he was adjudicated a second felony offender in August 1996 and sentenced as such in July 1997. More than one year later, in September 1998, the state billed the defendant as a third felony offender when it discovered a prior felony the defendant had committed in Jefferson Parish which had not been included on his rap sheet. The defendant contends that this was too late and that the new bill had not been filed within a reasonable time. La. R.S. 15:529.1(D) provides:
If, at any time, either after conviction or sentence, it shall appear that a person convicted of a felony has previously been convicted of a felony under the laws of this state ..., or has been convicted under the laws of any other state, or of the United States, or any foreign government or country, of a crime, which, if committed in this state would be a felony, the district attorney of the parish in which subsequent conviction was had may file an information accusing the person of a previous conviction....
Although the above statute does not impose a specific prescriptive period in which the district attorney must file an habitual offender information, it has been held that it does not allow an indefinite time for filing the information once the necessary information is available. State v. Broussard, 416 So.2d 109 (La.1982). *1248 Rather, the district attorney must file an habitual offender bill within a reasonable time after the prosecution knows that a defendant has a prior felony record. State v. Broussard, supra. The same considerations which underlie the constitutional right to a speedy trial compel a conclusion that upon conviction a defendant is entitled to know the full consequences of the verdict within a reasonable time. Since the enhancement of penalty provision is incidental to the latest conviction, the proceeding to sentence under that provision should not be unduly delayed. State ex rel. Williams v. Henderson, 289 So.2d 74 (La. 1974); La.C.Cr.P. art. 874.
In the instant case, the district attorney filed the third felony offender bill of information after learning about a felony that had been left off of the defendant's rap sheet. That felony was access device fraud, a violation of La. R.S. 14:70.4. The necessary information with regard to this prior felony conviction was apparently not available to the district attorney at the time of the filing of the original multiple felony bill of information in March 1996. Thus, the district attorney did not unreasonably delay in filing this third felony offender bill of information. The state clearly offers justification for its delay in instituting the habitual offender proceedings. Under these circumstances, the district attorney acted reasonably. This assignment is without merit.

THIRD FELONY OFFENDER ADJUDICATION
In this assignment of error, the defendant contends initially that the defendant should not have been adjudicated as a third felony offender because the state failed to prove that the defendant knowingly pled guilty to a felony, access device fraud, a violation of La. R.S. 14:70.4, in docket no. 93-920, Jefferson Parish. The sentence form, commitment form and defendant's acknowledgment of constitutional rights and waiver of rights on entry of plea of guilty to this charge of access device fraud were entered into evidence as exhibits during the November 13, 1998, habitual offender hearing.
The defendant argues on appeal that the state failed to prove that this conviction was for a felony. However, access device fraud is punishable by imprisonment "with or without hard labor." La. R.S. 14:70.4(E). As such, it is, by definition, a felony. See La. R.S. 14:2(4).
As to his further claims that the evidence failed to prove that the prior offenses were valid, we note that in order to challenge the validity of any of his prior convictions, the defendant was required to file a written response denying the allegations set forth in the bill of information within 15 days of arraignment. La. R.S. 15:529.1 D(1). The defendant failed to file a written response. Because of his failure to comply with the statute, the defendant is barred from directly attacking the validity of prior offenses on appeal.
This assignment of error lacks merit.

EXCESSIVE SENTENCE
As a third felony offender, the defendant was subject to a sentence of life imprisonment because the third felony, first degree robbery, was defined under La. R.S. 14:2(13) as a crime of violence. La. R.S. 15:529.1(A)(b)(ii). The defendant argues that imposition of a life sentence, given his personal history, was constitutionally excessive.
The record reveals the contrary. In a 15-year period, the defendant was arrested on at least 17 charges ranging from simple rape to attempted first degree murder to armed robbery. On several occasions, he benefitted substantially from plea agreements which reduced his sentencing exposures. When given the benefit of release on bond on the charge of first degree robbery, he committed an armed robbery. He had a history of violent behavior against persons and extensive drug use. However, he was not socially or economically deprived as a child. His disciplinary *1249 records at the Caddo Correctional Center showed aggression directed at deputies.
In sentencing the defendant for the instant offense, the trial court noted the adverse effect and fear still suffered by the victim, Mrs. Fitzgerald, as a result of the defendant's criminal actions. After reviewing the defendant's extensive criminal record, the trial court found that the defendant was "a constant threat to the community of Shreveport" and that there was no excuse for his "long, violent history and the numerous multiple crimes against persons that he has committed." In pronouncing sentence, the trial court stated its intention that the defendant "should not come back from Angola" and its earnest belief that the defendant had, by his conduct, earned "a one-way ticket to Angola."
The test imposed by the reviewing court in determining the excessiveness of a sentence is two-pronged. First, the record must show that the trial court took cognizance of the criteria set forth in La.C.Cr.P. art. 894.1. The trial judge is not required to list every aggravating or mitigating circumstance so long as the record reflects that he adequately considered the guidelines of the article. The second inquiry is whether the sentence imposed is too severe considering the circumstances of the case and the background of the defendant. A sentence violates La. Const. art. 1, § 20, if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Dorthey, 623 So.2d 1276 (La.1993). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Wilkerson, 29,979 (La. App.2d Cir.10/29/97), 702 So.2d 64.
The record fully supports the imposition of a life sentence upon this defendant. Under the facts set forth in this record, it cannot be said that a life sentence for this third felony offender is excessive.

CONCLUSION
The defendant's conviction for first degree robbery is affirmed, as is his sentence as a third felony offender to life imprisonment
AFFIRMED.
NOTES
[1] This same day we render an opinion addressing the defendant's conviction for an unrelated offense of armed robbery in # 32,498-KA. Although we originally consolidated these cases on appeal, we choose to render separate opinions for purposes of clarity. See State v. Ball, 32,498 (La.App.2d Cir.12/15/99), 748 So.2d 1249.
[2] When officers looked for the purse later, they were unable to locate it.
[3] While the defendant's trial, second felony offender adjudication and sentencing were conducted before Judge Bryson, the case was subsequently transferred to another division of criminal court. Consequently, the third felony offender adjudication and sentencing were before Judge Crichton.
[4] This witness testified that he and the defendant were together on the day of the offense from 2 p.m. until the defendant's arrest at about 9:30 p.m. He claimed that the defendant was shooting dice when the police arrived on the scene chasing another man who just "disappeared" and that the police arrested the defendant instead. His testimony was impeached by that of an assistant district attorney who had interviewed the witness; the witness had told the ADA that he last saw the defendant three to four hours before his arrest and that he knew "absolutely nothing" about the defendant's arrest or the criminal case.
[5] Mr. Cowgill stated that in his capacity as chief financial officer for a local hospital he was supported by a competent staff that could pick up the slack in his absence. As to the CPA work he performed on the side for individual clients, he stated that he did that work at night and that the trial would not interfere with it.
[6] The last juror selected was made first alternate and the trial proceeded with two, not one, alternate jurors.