795 So.2d 468 (2001)
STATE of Louisiana
v.
Wayne L. LEWIS.
No. 01-KA-155.
Court of Appeal of Louisiana, Fifth Circuit.
August 28, 2001.
*470 Paul D. Connick, Jr., District Attorney, Churita H. Hansell, Terry M. Boudreaux, Assistant District Attorneys, Gretna, LA, Counsel for the State of Louisiana, Appellee.
Bruce G. Whittaker, Graham Daponte, New Orleans, LA, Counsel for Wayne L. Lewis, Defendant-Appellee.
Wayne L. Lewis, Angola, LA, In Proper Person.
Panel composed of Judges JAMES L. CANNELLA, WALTER J. ROTHSCHILD, and JAMES C. GULOTTA, Pro Tempore.
WALTER J. ROTHSCHILD, Judge.
The charges in this case arose from an extensive investigation by the High Intensity Drug Trafficking Area Task Force (HIDTA), which is a cooperative law enforcement organization composed of federal agents, state police, and parish police. HIDTA's primary objective is to identify and monitor large-scale drug trafficking in the Gulf Coast region. Special Agent Robert Norton of the Drug Enforcement Administration (DEA) coordinated an extensive narcotics investigation targeting Wayne Dearmas (a/k/a Bummy) and the defendant, Wayne L. Lewis.
During the investigation, wiretaps were placed on the defendant's home and cellular telephones. On June 21, 1999, an undercover informant, Lamont Dubois, was sent to meet with the defendant to set up a controlled purchase of cocaine. Wire intercepts recorded conversations between the defendant and Mr. Dubois, and between the defendant and Wayne Dearmas. On June 22, 1999, Mr. Dubois met with the defendant and allegedly purchased a quarter kilogram of cocaine from him, in exchange for $6,500.00 in marked DEA money. Mr. Dubois was wearing a hidden body wire during the transaction. On June 28, 1999, the defendant was arrested.
On August 17, 1999, the defendant was charged by bill of information with distribution of cocaine, a violation of LSA-R.S. 40:967A.[1] He was arraigned on September 10, 1999 and pled not guilty. The defendant filed various pre-trial motions, including motions to suppress the evidence and the identification. Those motions were heard and denied on April 11, 2000. On April 25, 26, and 27, 2000, the defendant and Wayne Dearmas were tried by a 12-person jury, and the jury returned verdicts of guilty as charged as to both the defendant and Dearmas.
On June 12, 2000, the state filed a habitual offender bill of information, alleging the defendant to be a second felony offender. A hearing was held on August 10, 2000, and the trial court found the defendant to be a second felony offender. Thereafter, the court sentenced the defendant to 55 years at hard labor, without benefit of parole, probation, or suspension *471 of sentence. The court stipulated that the sentence would run concurrently with a two-year sentence in a separate case which had been made executory pursuant to probation revocation. The defendant made an oral motion for appeal. On August 14, 2000, the defendant filed a written motion for appeal, which was granted on September 27, 2000. This appeal concerns only Wayne Lewis.
In his first assignment of error, the defendant asserts that the trial court erred in allowing the state to engage in purposeful discrimination by using peremptory challenges to exclude African-Americans from the jury. The Equal Protection Clause of the Fourteenth Amendment guarantees that criminal defendants have the right to be tried by a jury selected by nondiscriminatory criteria. It is well established that the use of peremptory challenges based solely on a juror's race is prohibited. Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).
The United States Supreme Court has established a three-step analysis to be applied when addressing a claim that peremptory challenges were exercised in a manner violative of the Equal Protection Clause. First, a defendant must establish a prima facie case of discrimination by showing facts and relevant circumstances that raise an inference that the prosecutor used his or her peremptory challenges to exclude potential jurors on the basis of race. If the defendant fails to make a prima facie case, then the challenge fails. If a prima facie case is established, the burden then shifts to the state to articulate a race-neutral explanation for its peremptory challenges. To be facially valid, the prosecutor's explanation need not be persuasive, or even plausible; thus, unless the discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race-neutral. Purkett v. Elem, 514 U.S. 765, 767, 115 S.Ct. 1769, 1771, 131 L.Ed.2d 834 (1995). If a race-neutral explanation is tendered, then the trial court must determine whether the defendant has established purposeful discrimination. Purkett, supra; Batson, 476 U.S. at 96-98, 106 S.Ct. at 1722-1724. A single instance of race or gender discrimination during the jury selection process, which is not identified and corrected by the trial court, constitutes reversible error. Batson, 476 U.S. at 95-96, 106 S.Ct. at 1722-1723.
In determining whether a defendant has met his burden of showing purposeful racial discrimination in the state's exercise of peremptory challenges, the proper question is whether the proof offered by the defendant, when weighed against the state's proffered "race-neutral" reasons, is strong enough to convince the trier of fact that the claimed discriminatory intent is present. State v. Touissant, 98-1214 (La.App. 5 Cir. 5/19/99), 734 So.2d 961, 965, writ denied, 99-1789 (La.11/24/99), 750 So.2d 980. A trial judge's determination on a claim of purposeful discrimination depends largely on credibility evaluations, so his findings are entitled to great deference by the reviewing court. State v. Jones, 00-162 (La.App. 5 Cir. 7/25/00), 767 So.2d 862, 867.
In the present case, the prosecutor raised the first Batson challenge early in the jury selection process. She argued that the defense attorneys were using peremptory challenges to systematically eliminate white men from the jury. During selection from the first panel of prospective jurors, defendant's counsel, Mr. Ehle, challenged a white male, Mr. Rodriguez. Mr. Masinter, Wayne Dearmas' attorney, excused the next prospective juror, Mr. Zimmerman, a white male. Immediately *472 thereafter, Mr. Ehle excused another white male, Mr. St. Blanc. Noting that the defense had thereby used peremptory challenges to strike three white men in a row, the prosecutor raised a Batson challenge. The court requested a reason for the challenge from the defense. Although the trial judge did not expressly rule that the state had established a prima facie case of discrimination, a trial judge's demand for race-neutral justification for peremptory strikes is tantamount to a finding that enough evidence has been shown to support an inference of intentional discrimination. State v. Green, 94-0887 (La.5/22/95), 655 So.2d 272, 288. After Mr. Ehle provided a race-neutral explanation for striking Mr. St. Blanc, the trial judge denied the prosecutor's challenge.
During selection from the second panel of prospective jurors, Mr. Ehle struck Mr. Crull. Again the prosecutor objected, noting that this was the fourth white male excused by the defense. Mr. Ehle explained that he cut Mr. Crull because he was a court reporter, and could potentially take charge of the jury and influence deliberations. The prosecutor countered that every answer Mr. Crull had given in voir dire had been fair and impartial. The court agreed. The trial judge stated, "Let me say this, Counsel. I'm not going to make you keep him, but I will give the State as much latitude in their jurors as I'm giving you in yours."
Mr. Masinter subsequently excused Mr. Graff from the second panel. The prosecutor argued that this was the fifth white male cut by the defense, and that all of the jurors struck by the defense up to that point had been white men. By way of explanation, Mr. Ehle stated that Mr. Graff had fallen asleep during voir dire. The judge commented:
Counsel, let me state this for the record. It's the Court's opinion that you are purposely cutting white males. I no longer buy your excuses. I don't see him sleeping in the courtroom. His answers were no different from anybody else. The only problem is that for all practical purposesI'm going to state this for the recordI'm powerless to do anything about it. Because if I make you keep a particular juror, it's going to be reversible error. But I will give the State the same latitude I'm giving you. You are cutting white males intentionally, Counsel. (Emphasis added).
When the prosecutor elected to backstrike an African-American woman, Ms. Richmond, from the jury, Mr. Masinter asked the court to require a race-neutral explanation for this challenge. The following discussion took place:
The Court:
She has not done a pattern yet. She's cut four people. One was a black woman, one was a black man, and the other two were white. You have to show a pattern first.
The Prosecutor:
Second black woman I challenged for cause initially because she knew of the defendants. I challenged her for cause initially because she said she was uncomfortable sitting there looking at people she went to high school with.[2]
Mr. Masinter:
She is now looking at the majority of the jurors and she doesn't want this black-white makeup, but she's taking this black woman off to cause it to be an *473 all white jury when she excused [sic] us of taking white jurors off.
The Prosecutor:
I still have Ms. Green and she is a black juror.
The Court:
Still, your man cut five white males in a row and y'all said it wasn't a pattern, and she cut two out of four black females and y'all say it is a pattern? You can't have it both ways. If five out of five white males isn't a pattern, then two out of four black females is not a pattern.
Thereafter, Mr. Masinter excused Mr. Pettway, another white male, and then Mr. LaCompte. The prosecutor reasserted her Batson challenge. The judge commented that he believed that Mr. Ehle had shown a pattern of discriminatory strikes, but did not feel Mr. Masinter had exhibited such a pattern. The judge did not ask Mr. Masinter to submit a race-neutral explanation for the strike.
Near the end of jury selection, the prosecutor excused Ms. Morgan, an African-American. The defense objected. When asked to explain the strike, the prosecutor stated: "If I accept her and there is no challenges [sic] from the defense, then that's my jury. And there is no more back striking. And I intend to back strike at this point." The prosecutor went on to say, "I don't want a jury seated. I want to get to the ones that are behind her, like the men that are on deck." (Emphasis added). The judge asked her whether she wanted to "pass it off to get to some of the white males," and she responded, "Yes." (Emphasis added). The court then asked the prosecutor whether there was any other reason that she was excusing Ms. Morgan. By asking for a race-neutral explanation, the trial judge implicitly found that a prima facie case of discrimination had been proven by the defense. The prosecutor stated, "I didn't find her attentive, and I found her just to have an angry grin on her face. She was not responsive to me when I questioned her." However, the trial judge did not rule on the validity of the prosecutor's explanation.
Jury selection continued with a back strike by Mr. Ehle of juror Mr. Mathern, a white male. The prosecutor again objected. The judge commented, "I understand. It fits into his pattern that I've already found." (Emphasis added). Again, the judge did not require defense counsel to provide a race-neutral basis for the challenge.
The prosecutor attempted to challenge Mr. Moore, an African-American, for cause, because he had said he could not sit in judgment of another person. When the court denied her challenge for cause, the prosecutor used a peremptory challenge to strike Mr. Moore. Mr. Ehle again objected. The court accepted Mr. Moore's reluctance to sit in judgment as a race-neutral reason for exercising the challenge. Mr. Masinter subsequently excused Mr. Wolfe, a white male. The judge then stated, "I find a pattern on both the defendants." (Emphasis added). Ultimately, two African-Americans, Ms. Hill and Ms. Green, were seated on the jury.
The trial judge did not act on what he apparently saw as purposeful discrimination on the part of defense counsel. It seems that the trial judge felt that he could do nothing to stop the intentional discrimination he found by the defense counsel. He stated, "....if I make you keep a particular juror, it's going to be reversible error." However, the constitutional prohibition against racially discriminatory peremptory challenges applies to a black defendant's racially based challenges against white prospective jurors. State v. Knox, 91-1906 (La.11/30/92), 609 So.2d *474 803, 804. LSA-C.Cr.P. art. 795(E) provides:
The court shall allow to stand each peremptory challenge for which a satisfactory racially neutral reason is given. Those jurors who have been peremptorily challenged and for whom no satisfactory racially neutral reason is apparent or given may be ordered returned to the panel, or the court may take such other corrective action as it deems appropriate under the circumstances. The court shall make specific findings regarding each such challenge. (Emphasis added).
When a trial judge applies the three-step Batson analysis and determines that purposeful discrimination has been established, the trial judge has a duty to sustain the Batson objection, thereby disallowing the peremptory challenge and seating the prospective juror as a member of the jury. In State v. Ball, 32,497 (La. App. 2 Cir. 12/15/99), 748 So.2d 1239, writ denied, State ex rel. Ball v. State, 00-506 (La.10/6/00), 770 So.2d 364, the trial court had found that the state had shown a prima facie case of discrimination and requested race-neutral explanations for striking white prospective jurors. After the defendant provided reasons which the trial judge deemed "really marginal" and "awfully weak," the trial judge nevertheless denied the state's Batson challenge with reluctance and conceded that he was probably committing error. The state applied for writs, and the Second Circuit granted the writ, vacated the trial court's ruling, and ordered that the prospective juror in question be seated as a member of the jury. The trial proceeded and the defendant was found guilty of first degree robbery.
On appeal, the defendant again asserted that his peremptory challenge should have been allowed and complained of the trial court's actions in following the Second Circuit's decision to order the prospective juror in question seated on the jury. However, the Second Circuit affirmed its prior ruling finding that the state's Batson challenge was well-founded.
In State v. Wilson, 25,775 (La.App. 2 Cir. 2/23/94), 632 So.2d 861, the Court found that an African-American defendant violated Batson when he attempted to peremptorily excuse a white prospective juror and failed, upon the state's objection, to provide a race-neutral explanation for the challenge.
Considering Batson and the caselaw following that decision, it is clear that the trial judge was not powerless to do anything when he perceived intentional discrimination against white male prospective jurors. He should have disallowed the defendant's peremptory challenges when, after applying the Batson analysis, he found intentional racial discrimination.
The defendant charges that the court allowed and indeed encouraged the prosecutor to "even the score" by striking African-American jurors. We agree. The trial judge, fearing reversal, failed to correct what he repeatedly found to be discrimination by both defendants against white males. The court then made it clear that he would allow the prosecutor the same "latitude." The prosecutor accepted the court's offer and racial discrimination was then committed by both sides.
In Batson, the United States Supreme Court did not detail what constitutes a prima facie showing of discrimination, but commented:
.... a "pattern" of strikes against black jurors included in the particular venire might give rise to an inference of discrimination. Similarly, the prosecutor's questions and statements during voir dire examination and in exercising his challenges may support or refute an inference *475 of discriminatory purpose. These examples are merely illustrative. We have confidence that trial judges, experienced in supervising voir dire, will be able to decide if the circumstances concerning a prosecutor's use of peremptory challenges creates a prima facie case of discrimination against black jurors. (Emphasis added).
Batson, 476 U.S. at 97, 106 S.Ct. at 1723.
In State v. Green, supra at 288, the Louisiana Supreme Court held that the sole focus of the Batson inquiry is upon the intent of the prosecutor at the time he exercised his peremptory strikes. The court outlined several factors that could lead to a finding that a prima facie case has been made pursuant to Batson:
The defendant may offer any facts relevant to the question of the prosecutor's discriminatory intent to satisfy this burden. Such facts include, but are not limited to, a pattern of strikes by the prosecutor against members of a suspect class, statements or actions of the prosecutor against members of a suspect class, statements or actions of the prosecutor which support an inference that the exercise of peremptory strikes was motivated by impermissible considerations, the composition of the venire and of the jury finally empaneled, and any other disparate impact upon the suspect class which is alleged to be the victim of purposeful discrimination.
Id.
The trial judge's ruling regarding the state's challenge of Ms. Richmond is supported by the record. At that point, the prosecutor had cut only one other African-American juror, and she had also excused white jurors. The judge found that a pattern of discriminatory challenges had not been established. Although the judge did not use the term "prima facie," the judge's statements clearly indicate that he did not believe that the defendant had established a prima facie case of discrimination. We agree with the trial judge that the defense had not shown a prima facie case of discriminatory strikes by the prosecution at that point in jury selection. However, the prosecutor's comments during the latter part of the jury selection are particularly troublesome and are sufficient to establish a prima facie case of racial and gender discrimination. Specifically, a prima facie case of discrimination was established when the prosecutor commented that she wanted to strike Ms. Morgan in order to move on to some of the white males in the venire. At that point, the burden shifted to the prosecutor to articulate a race-neutral explanation for the challenge. Although she offered a race-neutral explanation for striking Ms. Morgan, the judge did not rule on its validity or express an opinion as to whether the defense ultimately proved a case of purposeful discrimination.
In State v. Myers, 99-1803 (La.4/11/00), 761 So.2d 498, 502, the Court discussed the necessity for the trial court to address Batson challenges:
The issue of purposeful ... discrimination in the use of peremptory challenges is a matter of utmost seriousness affecting not only the trial itself, but the perceived fairness of the judicial system as a whole. The trial judge observes first-hand the demeanor of the attorneys and venire persons, the nuances of questions asked, the ... composition of the venire, and the general atmosphere of the voir dire that simply cannot be replicated from a cold record. Thus, when a Batson challenge is made, it is incumbent upon the trial judge to address the challenge, either by ruling on whether a prima facie case of discriminatory intent has been made or by requiring race-neutral reasons for the strikes.
*476 In State v. Givens, 99-3518 (La.1/18/01), 776 So.2d 443, the Court found that the evidence was sufficient to establish a prima facie case of purposeful discrimination. However, the Court did not complete the three-step Batson analysis. The Louisiana Supreme Court remanded the matter to the trial court for an evidentiary hearing at which the trial court would require the prosecutor to present race-neutral reasons for the strikes and the trial court would complete the three-step analysis set forth in Batson.
In the present case, the trial judge did not specifically rule on the validity of the prosecutor's race-neutral reasons for striking Ms. Morgan or state for the record whether or not the defendant had established purposeful discrimination. Therefore, he did not complete the Batson three-step inquiry. However, we decline to remand the matter for an evidentiary hearing. The trial judge did request a reason for the strike, and the prosecutor gave race-neutral reasons. It is clear that he accepted the explanation provided by the prosecutor and that he did not find intentional discrimination by the prosecutor, because he did not indicate that the Batson challenge was granted, and Ms. Morgan remained stricken from the jury. Therefore, remand for an evidentiary hearing is unnecessary.
The defendant made a prima facie case of discrimination and the prosecutor articulated a race-neutral reason for the challenge. The next part of the three-step Batson inquiry is to weigh the defendant's proof of discrimination against the prosecutor's race-neutral reason. Considering the record before us, we find that the explanation proffered by the prosecutor was insufficient to overcome her initial comments. Although she provided what would have otherwise been a reasonable race-neutral explanation for the strike, the prosecutor's prior comments show a clear intent to exclude a black female from the jury in order to select white male jurors.
As stated earlier, it is the intent of the prosecutor at the time of the peremptory strike that is the focus of the Batson inquiry. State v. Green, supra at 288. The comments of the prosecutor clearly reflect an intent to select jurors in a racially discriminatory manner. Although we agree with the trial judge that defense counsel was intentionally striking white males from the jury, allowing the state to exercise the same practice of racial discrimination is not allowed under the law. Therefore, we find that the defendant has shown purposeful discrimination by the prosecution during jury selection in this case, requiring this Court to reverse the conviction as to the defendant, Wayne L. Lewis.
The defendant's challenge to the trial court's failure to excuse a juror based upon a bias in favor of a police officer's credibility is also problematic; however, since this Court must reverse on other grounds, it is unnecessary to address this or any of the remaining assignments of error asserted by the defendant. For the reasons set forth above, we are compelled to reverse the defendant's conviction, vacate his sentence, and remand the case to the trial court.
REVERSED AND REMANDED.
NOTES
[1] The six-count bill of information charged the defendant with one count of racketeering, in violation of LSA-15:1352A(13), and three counts of distribution of cocaine, in violation of LSA-R.S. 40:967A. Lea Ann Batiste, Dwight Dearmas, Walter Dearmas, Sr., Walter Dearmas, Jr., and Wayne Dearmas were named as co-defendants in Count 1, the racketeering charge. Wayne Dearmas was named as a co-defendant with respect to one count of cocaine distribution, Count 4. The defendant was charged alone in Counts 5 and 6, which were both charges of cocaine distribution. The defendant was not named in Counts 2 and 3 of the bill of information. This appeal involves only Count 4, distribution of cocaine.
[2] The prosecutor apparently refers to Ms. Jenkins, a prospective juror in the first panel. The court denied the prosecutor's motion to challenge her for cause. The prosecutor then used a peremptory challenge to excuse her. Defense counsel did not raise a Batson objection to Ms. Jenkins' dismissal.