844 So.2d 236 (2003)
STATE of Louisiana
v.
Robert F. WOODWARD.
No. 02-KA-1017.
Court of Appeal of Louisiana, Fifth Circuit.
March 25, 2003.
*237 Paul D. Connick, Jr., District Attorney, Terry Boudreaux, Assistant District Attorney, Gretna, LA, for Plaintiff/Appellee.
Brett F. Willie, Andry & Andry, L.L.C., New Orleans, LA, for Defendant/Appellant.
Panel composed of Judges THOMAS F. DALEY, CLARENCE E. McMANUS, and WALTER J. ROTHSCHILD.
THOMAS F. DALEY, Judge.
The defendant was convicted of seven counts of theft. He has appealed claiming his sentence is excessive. For the reasons that follow, we affirm.
FACTS:
The defendant, Robert F. Woodward, operated a business named Fred's Automotive and Diesel Service in 1997. At some point, the name of the business was changed to A to Z Auto and Diesel. From June through December of 1998, at least twelve people reported that they brought vehicles to this business to be repaired and although they paid for the repairs the repairs were not performed. As a result, the defendant was charged with twelve counts of theft. He proceeded to trial on seven counts. Five counts were dismissed.
At trial, the State presented the testimony of the seven victims. Robert Perkins testified that he owned a 1995 Chevrolet Blazer that he brought to Fred's Automotive and Diesel for repairs in June 1998 after speaking with defendant by phone. Perkins paid $1,000.00 for defendant to start work on rebuilding the engine and transmission. The vehicle was towed from Perkins' house by the defendant. Perkins testified that he made repeated trips to the repair shop to inquire about the vehicle, but each time he found the work not done. He asked for a return of his money. The vehicle had been disassembled, but no repairs were made. The vehicle was returned unrepaired and the transmission, which was previously operative, was not working. The money he paid for the repairs to be done by defendant was not refunded.
Rene Dunn testified that on September 10, 1998 she owned a 1990 Dodge Caravan that needed the transmission rebuilt. The defendant came to Slidell to retrieve the payment for the repairs and he told Ms. Dunn that he would work with her on the payments. Ms. Dunn had the van towed to defendant's repair shop and she was told that the repairs would take one week. Ms. Dunn paid defendant $350.00, and followed that payment with a $100.00 payment. The vehicle remained at the shop five or six months, during which time the defendant continually assured her the vehicle would be ready the next day, but when the next day arrived he made excuses. Ms. Dunn rented a car after the defendant assured her he would pay for the rental. When she finally recovered her vehicle, it ran only a few blocks before stalling. The transmission had not been repaired; and the brakes, tires, and air conditioner were damaged during the stay at the shop. Ms. Dunn ended up owing $1,200.00 to $1,300.00 in rental car bills *238 that defendant had previously promised to pay, but did not.
Brian Heath owned a 1985 Blazer, which he described as being in "mint condition," but in need of a new engine. According to this witness, in September 1998, he contacted the defendant for the installation of a rebuilt engine. Mr. Heath first paid $800.00 to the defendant in order for defendant to start the work and the vehicle was towed by defendant to the shop. Thereafter, Mr. Heath paid an additional $1,200.00 to $1,400.00 for the repairs. The vehicle was in the shop for four months. Mr. Heath made repeated calls to the defendant and when he recovered his vehicle it would only run for about five or six feet before stopping. The witness testified that the rebuilt engine performed worse than the old engine. According to Mr. Heath, the motor and clutch were ruined while in the shop, the radio and speakers were missing, the wrong carburetor had been installed, and the interior of the vehicle smelled of a foul odor.
Jonathan Howard (Howard) testified that he was the owner of a 1987 Buick LaSabre that needed an engine. In September 1998 the defendant and his secretary went to Howard's place of work and Howard gave the defendant $650.00 to begin the repair work. Defendant had the vehicle towed to the repair shop. After two weeks Howard threatened to retrieve his vehicle. Thereafter, he arrived with his own tow truck to pick up his vehicle. He found the car disassembled at the shop and the wheels, hood, radiator, and parts of the engine were missing. There were four buckets of parts sitting inside the vehicle. According to this witness, the vehicle had to be crushed because he could not have it repaired and it could no longer remain outside his apartment complex.
Joyce Augillard testified that she owned a 1991 Nissan Stanza that was in need of a rebuilt engine. Ms. Augillard saw a newspaper ad for defendant's repair shop, called for a price quote, and was given a price of $1,500.00 by the defendant for the work. She paid $700.00 for him to begin the work. According to this witness, she explained to the defendant that she needed her car in three days for work. She testified that the defendant arranged for a rental car and he was to defray the cost of the rental. Ms. Augillard called repeatedly about her car and was told it had not been repaired. She eventually retrieved the vehicle by paying to have it towed from the shop. When she retrieved the vehicle the radiator was missing, some parts were in the trunk, and the tires were gone.
Vicky Lemoine testified that, in December 1998, she owned a 1998 Chevrolet 510 pickup truck. In November or December of that year she contacted the defendant in order to have a stripped bolt in the engine's head repaired. She contacted A-Z Auto and Diesel for a quote after seeing an ad in the newspaper and was told that the repairs would cost between $50.00 and $70.00. She testified that the vehicle was towed to the shop and the defendant asked for a cash payment. Payments were made by this witness on November 27, 1998 of $171.82 and on December 15, 1998 of $398.00. After many phone calls Ms. Lemoine recovered her vehicle, but it was not fixed. She returned to the shop and spoke with defendant who assured her the work was guaranteed and he would fix the problem. Defendant kept the vehicle two or three more weeks, but he still did not repair it. According to Ms. Lemoine the vehicle stopped running every six to eight blocks. She refused to return to the shop a third time.
Sherry Smith testified that on December 15, 1998 she owned a 1995 double cab Nissan pickup truck. She contacted A-Z *239 Auto and Diesel because her radiator needed repairs. She paid defendant a total of $600.00 for the repairs to the truck. The vehicle went into the shop on December 13, 1998 and was not returned until February 8, 1999. She called the shop four times and also went to visit. Upon retrieving the vehicle from the repair shop, with the help of the district attorney's office, she observed that the vehicle had been severely damaged. There was no engine, a battery had been thrown through the windshield, the chrome fixtures were missing, and the lights were out.
The defendant, Robert Woodward, testified that had sold the repair shop to his son in April 1997 after suffering a heart attack. He denied that he received money from any of the victims for the repair agreements. He testified that his son changed the name of the business (from Fred's) to A-Z Auto and Diesel. He also stated that his son, who was later found to have a drug addiction, had died of cancer. Defendant further testified about each victim's repairs. He stated that Mr. Perkins vehicle was not repaired because before the work could be done Perkins demanded return of his vehicle. He stated that Ms. Dunn's vehicle had in fact been repaired and was running. He testified that Mr. Howard's vehicle was not repaired because the owner could not pay for the needed parts. He stated that he was in the hospital during this time. Defendant stated that Ms. Auguillard's vehicle was not repaired because the parts that were purchased were returned to the store. He indicated that the engine had been taken apart and more parts purchased. Regarding Ms. Lemoine, he testified that someone had worked on her vehicle and had voided the warranty. The defendant testified that the vehicle owned by Mr. Heath was missing mats and a radio when it came to the shop. Finally, he testified that Ms. Smith's vehicle was brought into the shop in mid-December and that she wanted it by Christmas. He also testified that his son had purchased the parts for the vehicle at the end of December. Defendant said his son was ultimately responsible for the repairs, and defendant denied working on any of the vehicles.
At the conclusion of the judge trial, the defendant was found guilty of six counts of theft of goods valued at over $500.00 and one count of theft of goods valued between $100.00 and $500.00. He was sentenced to serve one year for each of the counts involving theft over $500.00 and these sentences were to be served consecutively. He was sentenced to serve one year on the remaining count and this year was to be served concurrently. He has appealed, claiming his sentence is excessive.
LAW AND DISCUSSION:
On appeal, as in the trial court, defendant contends that the sentence, which is within statutory limits, is nonetheless excessive and grossly disproportionate to the severity of the crime. In this regard, he also alleges the trial judge did not articulate his consideration of the sentencing guidelines set forth in LSA-C.Cr.P. art. 894.1 and he failed to take into consideration mitigating factors, such as defendant's age, physical condition, and lack of prior criminal history in sentencing defendant.
The State replies that the defendant has not shown an abuse of sentencing discretion by the trial judge.
To determine whether a sentence is excessive, the reviewing court must impose a two-pronged. First, the record must show that the trial court took cognizance of the sentencing guidelines set forth in LSA-C.Cr.P. *240 art. 894.1. State v. Lobato, 603 So.2d 739, 751 (La.1992). The trial judge "shall state for the record the considerations taken into account and the factual basis therefore in imposing sentence." LSA-C.Cr.P. art. 894.1(C). However, when the trial judge fails to articulate every circumstance listed in the sentencing guidelines, a remand is not necessary if there is an adequate factual basis for the sentence contained in the record. State v. Lanclos, 419 So.2d 475, 478 (La.1982).
After determining whether the trial court complied with the provisions of LSA-C.Cr.P. art. 894.1, the reviewing court must then determine whether the sentence imposed is too severe given the circumstances of the case and the background of the defendant. State v. Lobato, supra.
The sentencing court is given wide discretion in imposing a sentence within the statutory limits and such a sentence will not be set aside as excessive in the absence of a manifest abuse of discretion by the sentencing court. State v. Square, 433 So.2d 104, 110 (La.1983). On appellate review of sentence, the only relevant question is whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate. State v. McBride, 01-588 (La.2/8/02), 807 So.2d 836.
The defendant in the present case was convicted and sentenced on six counts of theft over $500.00 and one count of theft between $100.00 and $500.00 in violation of LSA-R.S. 14:67. The statutorily prescribed sentencing range, at the time of these offenses for theft in the amount of $500.00 or more, was imprisonment with or without hard labor for not more than ten years or a fine of not more than $3,000.00, or both. LSA-R.S. 14:67(B)(1). The statutorily prescribed sentencing range at the time of this offense for theft between $100.00 and $500.00 was imprisonment with or without hard labor for not more than two years or a fine not to exceed $2,000.00 or both. LSA-R.S. 14:67(B)(2).
In this case the court sentenced the defendant to imprisonment of one year, for each of the six counts of theft over $500.00, with the sentences ordered to run consecutively. He also sentenced defendant to imprisonment of one year for the one conviction of theft between $100.00 and $500.00 and that sentence was ordered to run concurrently with those previously imposed. Thus, the sentences were within the low range of those statutorily prescribed for the offenses of which defendant was convicted.
Prior to sentencing the trial judge ordered a pre-sentence report for consideration at sentencing. This report, which was admitted into evidence, indicates that this was the defendant's first criminal offense, that he is 56 years old, and suffers from heart disease. The report contains statements form Ms. Dunn, Mr. Heath, Ms. Augillard, and Ms. Smith that they were still suffering financial hardship because of the defendant's actions. All of the victims requested that the defendant not be sentenced to probation and that he receive the maximum sentence. The trial judge who presided over the bench trial and sentencing gave the following reasons for the sentences imposed:
The trial of this case left me with the impression that Mr. Woodward did great hardships on several of these victims, created quite a problem with them, with the way he treated them and took the cars in and didn't do any work on them. Some of them had severe problems because of it.
*241 Defendant's Motion for Reconsideration of Sentence wherein he alleged that the sentence imposed was excessive was denied without reason.
The trial judge ordered and considered the pre-sentencing report prior to sentencing this defendant. As such, he was aware of the mitigating factors that defendant now urges on appeal (i.e., age, physical condition and lack of a criminal history). As a result of judge's consideration of the pre-sentence report and as evidenced by the reasons given at sentencing, we find that the trial judge took into account both mitigating and aggravating factors in sentencing defendant in compliance with the dictates of LSA-C.Cr.P. art. 894.1. Thus, a factual basis for the sentences exist.
Moreover, the sentences are not constitutionally excessive, on the facts of this case. The defendant was convicted of committing seven felony thefts within a six month time period, took no responsibility for his actions, and attempted to blame all of this on his dead son. Additionally, as noted by the sentencing judge and illustrated by the testimony, defendant's actions created great hardships for his victims in that he deprived them of their money for work he did not do. He damaged and/or destroyed the property of the victims. He caused the victims to sustain additional debts for towing bills, car rentals (which he promised to cover and did not), and repairs (which he promised, but did not perform). In many of the cases he also deprived victims of their sole means of transportation with which to earn a living.
In State v. Strother, 606 So.2d 891 (La. App. 2 Cir. 9/23/92), writ denied, 612 So.2d 55 (La.1993), the Second Circuit, relying on State v. Joles, 492 So.2d 490 (La.1986), cert. denied, Joles v. Louisiana, 479 U.S. 1056, 107 S.Ct. 933, 93 L.Ed.2d 984 (1987), affirmed a defendant's five-year sentence on each of five counts of theft in excess of $500.00. Some of the sentences were ordered to run concurrently and some to run consecutively. The sentences were imposed after defendant was convicted of inducing a series of elderly clients into giving him funds. In sustaining the sentence, the appellate court noted the following:
Technically a first offender, Strother committed `major' thefts from 13 known victims until his crimes were fortuitously discovered four years later. Any sanction less than a significant period of incarceration would deprecate the seriousness of his offenses.
State v. Strother, 606 So.2d at 896 (emphasis added).
Considering the aggravating circumstances of this case in terms of financial damage, loss of property, violation of trust, and personal anguish suffered by the victims we find that a sentence of one year of imprisonment per offense (with one year being served concurrently) was not excessive.
The record was reviewed for errors patent, according to LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990). The review reveals two errors patent in this case.
There is a conflict between the commitment, minute entry, and the transcript regarding the sentence imposed. No mention is made in the transcript that the sentence is to be served with hard labor and since the sentencing provisions of LSA-R.S. 14:67(B), as they existed at the time of this provision, stated that the sentence could be imposed "with or without hard labor" it would appear the judge *242 elected to impose sentence without hard labor. The commitment/minute entry, however, indicates that sentence was imposed "with hard labor." When there exists a conflict between the minutes and the transcript, the transcript controls. State v. Lynch, 441 So.2d 732, 734 (La.1983). Therefore, this matter is remanded to the district court to correct the minute entry to conform with the transcript. State v. Lemons, 99-2158 (La.4/20/00), 760 So.2d 1152.
The trial judge failed to inform the defendant of the prescriptive period for post-conviction relief under LSA-C.Cr.P. art. 930.8. Therefore, the district court is ordered to advise the defendant of the prescriptive period for seeking post-conviction relief in writing and file proof of the notice in the record. State v. Boles, 99-662 (La.App. 5 Cir. 11/10/99), 750 So.2d 1059.
CONCLUSION:
For the foregoing reasons, the defendant's sentence is affirmed. This matter is remanded to the district court for the limited purpose of correcting the minute entry to conform with the transcript and informing the defendant of the appropriate time period for seeking post-conviction relief.
AFFIRMED; MATTER REMANDED.