864 So.2d 843 (2003)
STATE of Louisiana
v.
Daniel PERRILLOUX.
No. 03-KA-0917.
Court of Appeal of Louisiana, Fifth Circuit.
December 30, 2003.
*846 Harry J. Morel, Jr., District Attorney, Kim K. McElwee, Hahnville, LA, for Plaintiff/Appellee.
Frank Sloan, Louisiana Appellate Project, Mandeville, LA, for Defendant/Appellant.
Panel composed of Judges SOL GOTHARD, THOMAS F. DALEY and CLARENCE E. McMANUS.
SOL GOTHARD, Judge.
Defendant, Daniel Perrilloux, appeals his conviction and sentence on charges of armed robbery and attempted second degree murder. For reasons that follow, we affirm.
Perrilloux was originally charged in a two-count bill of indictment with the second degree murder of Luan Nguyen and the attempted first degree murder of Wendy Owens. He was arraigned and entered a plea of not guilty on both counts. The indictment was subsequently amended twice to charge armed robbery of Luan Nguyen and attempted second degree murder of Wendy Owens. The defendant was re-arraigned after each amendment and ultimately entered pleas of not guilty by reason of insanity to both charges.
After a four-day trial, a jury found defendant guilty as charged on the armed robbery charge and guilty of the lesser and included crime of attempted manslaughter on the attempted second degree murder charge. In due course defendant was sentenced to ninety years of imprisonment at hard labor without benefit of parole, probation or suspension of sentence on the armed robbery conviction, and to a concurrent twenty year sentence on the attempted manslaughter conviction. A timely appeal was filed and granted.

FACTS
On July 22, 2000, Daniel Perrilloux parked his silver Chrysler vehicle on the side of Harry's One Stop convenience store located at Highway 628 and Hollywood Park Road in Montz, Louisiana. He entered the store armed with a tire wrench and a knife, stood at the counter and demanded money. According to Perrilloux's testimony he intended to rob the store to get money to purchase cocaine. The owner of the store, Luan Nguyen, opened the cash register and gave some money to Perrilloux. In the course of the robbery, Mr. Nguyen produced a gun which Perrilloux and Mr. Nguyen wrestled over. During the struggle Mr. Nguyen was shot in the head and killed. *847 As defendant ran from the store, he was seen by the second victim, Ms. Wendy Owens, a customer of the store. According to Perrilloux's testimony, he believed that Ms. Owens was trying to make a note of the license plate on his car. To avoid this, Perrilloux shot several times at Ms. Owens. The shots missed Ms. Owens, but entered the back window of her vehicle. Perrilloux fled the scene.
As this crime was being investigated, officers received notice of an attempted armed robbery of the Kart-N-Karry convenience store in LaPlace. During this attempted robbery, the perpetrator was armed with a tire tool. The description matched that of the robber in the crime being investigated. Perrilloux was subsequently arrested by police.

LAW
On appeal defendant assigns two errors for our review. In the first, he argues the trial court abused its discretion in failing to sustain a Batson[1] challenge. In particular, he reasons that the State's explanation for striking potential juror Deloyd Dabney was a "concocted pretext," and it should not have been accepted as a "race-neutral" explanation that satisfied the State's burden under Batson.
The State replies that the defendant did not satisfy his burden of establishing a prima facie case of purposeful discrimination by the State in its use of peremptory strikes. Additionally, the State adds that the trial court judge correctly found the State's exclusion of Deloyd Dabney was for race-neutral reasons, not because of its intent to exclude a juror on the basis of race.
It is well settled that the use of peremptory challenges based solely on a juror's race is prohibited. Batson v. Kentucky, supra. The Batson decision is codified in our law in La.C.Cr.P. art. 795(C). In Batson, the United States Supreme Court established a three-step analysis to determine whether a peremptory challenge has been used in violation of the Equal Protection Clause.
First, a defendant must establish a prima facie case of discrimination by showing facts and relevant circumstances that raise an inference that the prosecutor used his or her peremptory challenges to exclude potential jurors on the basis of race. Batson, 476 U.S. at 94, 106 S.Ct. at 1722, 90 L.Ed.2d at 86; State v. Harris, 01-408 (La.6/24/02), 820 So.2d 471, 473. In order to establish a prima facie case, the defendant may offer any facts relevant to the question of the prosecutor's discriminatory intent to satisfy this burden. Such facts include, but are not limited to, a pattern of strikes by a prosecutor against members of a suspect class, statements or actions of the prosecutor which support an inference that the exercise of peremptory strikes was motivated by impermissible considerations, the composition of the venire and of the jury finally impaneled, and any other disparate impact upon the suspect class which is alleged to be the victim of purposeful discrimination. State v. Green, 94-887 (La.5/22/95), 655 So.2d 272, 288. It is not enough that a discriminatory result be evidenced but rather that result must be traced to a discriminatory purpose. The sole focus of the inquiry is upon the intent of the prosecutor at the time he exercised his peremptory strikes. Id. If the defendant fails to make a prima facie case, then the challenge fails.
Second, if a prima facie case is established, the burden shifts to the State to come forward with a race-neutral explanation for its peremptory challenges. Purkett v. Elem, 514 U.S. 765, 767, 115 *848 S.Ct. 1769, 1771, 131 L.Ed.2d 834, 839 (1995); Hernandez v. New York, 500 U.S. 352, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991); State v. Harris, supra, 820 So.2d at 473. The race-neutral explanation must be one that is clear, reasonably specific, legitimate and related to the case at bar. State v. Dunn, 01-1635 (La.11/1/02), 831 So.2d 862, 869. This is a burden of production, not one of persuasion. State v. Harris, supra. Unless the discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race-neutral. Purkett, supra, 514 U.S. at 768, 115 S.Ct. at 1771, 131 L.Ed.2d at 839; State v. Duplessy, 853 So.2d 77 (La.App. 5 Cir. 7/29/03).
Third, if a race-neutral explanation is tendered, then the trial court must determine whether the defendant has established purposeful discrimination. Purkett, supra; Batson, supra; Harris, supra. The question is "whether the defendant's proof, when weighed against the prosecutor's proffered `race-neutral' reasons, is strong enough to persuade the trier-of-fact that such discriminatory intent is present." State v. Green, supra, 655 So.2d at 290.
In State v. Duncan, 99-2615 (La.10/16/01), 802 So.2d 533, 549, the Louisiana Supreme Court observed the following regarding the selection of a token number of persons from the cognizable racial group:
Although we agree with defendant that the mere presence of some African-Americans on the jury is no bar to find a prima facie case, we also recognize, as the state contends, that it is appropriate to consider the fact that the state did not eliminate all African Americans when deciding whether or not there exists a prima facie case of discrimination.
A trial court's ruling on a Batson challenge is afforded great discretion. In State v. Dunn, supra, 831 So.2d at 872, the Louisiana Supreme Court also stated:
Because it is difficult to detect intent from a cold transcription of the record, the reviewing court should give great deference to the trial judge's findings since those findings largely turn on an evaluation of credibility.
A single instance of race discrimination during the jury selection process, which is not identified and corrected by the trial court, constitutes reversible error. Batson, supra, 476 U.S. at 95-96, 106 S.Ct. at 1722-1723; State v. Lewis, 01-155 La.App. 5 Cir. 8/28/01), 795 So.2d 468, 471, writ denied, 01-2682 (La.8/30/02), 823 So.2d 939.
The defendant in this case is an African-American and the victims are not. The racial composition of the general venire is unknown from the record. Likewise, the record does not clearly establish the racial composition of the petit jury in this case, but it appears to indicate the presence of one African-American female juror on the main jury panel, and one alternate African-American female juror. In the selection of the twelve-member jury panel in this case, the record shows the State exercised four of six peremptory challenges against potential jurors who were African-American: Leotha Alexander, Rachelle Thomas, Edward Givens, and Deloyd Dabney. There were two jury panels who were questioned in this case, and the twelve-member jury was selected from the first panel, while the two alternate jurors were selected from the second jury panel.
Following the voir dire of the first jury panel, the State's first peremptory challenge was exercised against Ms. Leotha Alexander, an African-American female. The State mentioned that the reason for striking this potential juror was because the juror had stated that she would prefer *849 to see the weapon used to commit the crime and because she had family members who had been arrested for drug violations. The State's second peremptory challenge was exercised against Ms. Rachelle Thomas, an African-American female. The reason stated by the prosecution for exclusion was that Ms. Thomas indicated that she formerly had a social connection to the defendant, when Ms. Thomas and defendant were students. Ms. Thomas stated that the defendant was a football player and she was on the dance team in school.
The defense lodged a Batson challenge and indicated that both Alexander and Thomas were African-American females. The defense also stated that Ms. Thomas had stated that she did not really know the defendant, to which the prosecution disagreed. The trial judge stated that he found the prosecution's reasons to be race-neutral and the judge also stated that he did not find the defendant had established a discriminatory basis for exclusion.
The State's third peremptory exception was exercised against Mr. Edward Givens, an African-American male. The defense again urged a Batson challenge. The State noted its reasons for exclusion as being the fact that Mr. Givens had not been forthcoming about his son's mental illness and Mr. Givens' possible sympathy for the defendant, because of Givens's son's condition of mental illness. Thereafter, the trial court judge stated that he was not convinced the defendant had presented a prima facie case of discrimination, but he noted that three African-Americans had been struck by the State. The State responded that it would have struck Mr. Gros, who was a Caucasian nineteen-year-old male, but the defense exercised their challenge against him.
The State exercised its fourth peremptory challenge against Mr. Brad Caillouet, a Caucasian male, because he had alcohol and drug problems. The State's fifth peremptory challenge was exercised against Deloyd Dabney, a nineteen-year-old African-American male. The defense raised a Batson challenge and noted that four of the State's five challenges were exercised against African-Americans. The State responded that it would have eliminated Mr. Gros for the same reason she chose to eliminate Mr. Dabney. Thereafter, the trial judge stated for the record that four African-Americans had been struck by the State and the trial judge found the defendant had established a prima facie inference that the State's preemptory challenges were being used to exclude a certain class of jurors (i.e., African-Americans), and he noted the State now had the burden to refute this.
The State responded that Mr. Dabney was too young and did not have the necessary life experiences to handle the complex issues this case involved. In particular, the following explanation was given:
PROSECUTOR:
That's it. He's young. He's 19 years old. I wouldn't be keeping anybody else that's that young.
THE COURT:
I'm sorry?
PROSECUTOR:
I wouldn't keep anybody else who's that young.
DEFENSE:
Is there a reason that young people are not fair and impartial?
PROSECUTOR:
I think in this case, Judge, that the legal concepts are going to be a little more complicated and require a little more living to have been done to understand what is coming forward.
*850 Thereafter, the judge called Mr. Dabney to the bench and he was questioned by the court. Mr. Dabney indicated that he was a nineteen-year-old graduate of Destrehan High School and he worked for the Grand News Group as a stock person. He also stated that he had not gone to vo-tech school nor to college, but while in high school, he earned grades of "B" and "C." He also stated that he could understand the concepts and he was sure he could follow the law. Mr. Dabney indicated he did not think his age would be a problem.
Following the questioning of Mr. Dabney, the prosecutor added an additional basis for exclusion, namely, that she had observed that Mr. Dabney had a gold and diamond earring in his ear. The prosecutor was of the opinion that this indicated this potential juror could be involved in drugs and also that he did not have a good perception of himself. Thereafter, the court accepted the State's reasons as being race-neutral and reasonable. The court also found that a pattern of discrimination had not been established and the judge granted the peremptory challenge of Mr. Dabney.
Thereafter, both the State and the defense accepted Ms. Lori Davis, an African-American female. The State's sixth and final peremptory challenge exercised before the twelve-member panel was selected from the first jury panel was against Mr. Charles Moore, a Caucasian male.
During the voir dire of the second jury panel, the State exercised one peremptory challenge to exclude Mr. Brad Palmer. Following the selection of the two alternate jurors from this panel, the State noted that it had agreed to the selection of Ms. Stephanie Williams, an African-American female from this panel to serve as an alternate juror.
Defendant, on appeal, complains that Mr. Dabney's exclusion from the jury was racially motivated. He alleges that the "earring explanation" given by the State was a concocted pretext. In this regard he points to the fact that this explanation was only given after the prosecution's first explanation for exclusion (i.e., youth and inexperience) failed, after being rebutted by Dabney during questioning by the court.
A juror's age has been found to be an acceptable race-neutral reason for the State to exercise a peremptory challenge. See, State v. Thompson, 516 So.2d 349, 354 (La.1987), cert. denied, 488 U.S. 871, 109 S.Ct. 180, 102 L.Ed.2d 149 (1988), reh'g denied, 488 U.S. 976, 109 S.Ct. 517, 102 L.Ed.2d 551 (1988).
A potential juror's appearance, when considered with other factors, has also been held to constitute a race-neutral basis for challenge under Batson. See, Purkett v. Elem, 514 U.S. at 769, 115 S.Ct. at 1771(long, unkempt hair and beard); State v. Johnson, 00-1552 (La.App. 5 Cir. 3/28/01), 783 So.2d 520, 526, writ denied, 01-1190 (La.3/22/02), 811 So.2d 921 (earrings, holes in jeans and was tardy); State v. Banks, 96-652 (La.App. 5 Cir. 1/15/97), 694 So.2d 401, 408 (gold jewelry and T-shirt and alleged he was disabled); State v. Jones, 98-842 (La.App. 5 Cir. 12/10/99), 729 So.2d 57, 61 (purple hair and indecisive).
In Purkett v. Elem, supra, 514 U.S. at 769, 115 S.Ct. 1769, the United States Supreme Court found that the prosecutor's proffered explanation that he struck a juror because of long, unkempt hair, a mustache, and a beard is a race-neutral reason. The Supreme Court stated the following rationale (quoting in part from EEOC v. Greyhound Lines, Inc., 635 F.2d 188, 190, n. 3 (C.A.3, 1980)):
'The wearing of beards is not a characteristic that is peculiar to any race.' *851 And neither is the growing of long, unkempt hair.
Additionally, perceived sympathy with the defendant has been held to be a race-neutral challenge under Batson. See, State v. Thompson, supra, 516 So.2d at 354; State v. Nieves, supra, 653 So.2d at 685.
In this case, the first basis for exclusion mentioned by the State was the fact that this potential juror was young and had not had sufficient life experiences, and this gave the prosecutor concern that he would be unable to assimilate the legal concepts involved in this case. In this case, it was more than mere age that was the basis for exclusion. As explained by the prosecutor, it was the juror's lack of life experiences. Although the answers elicited regarding the defendant's age and educational background may have negated the objection that the defendant was young, they did not appear to overcome the objection on the basis that the juror lacked life experiences that would enable him to deal with the technical defenses presented by this case. Also persuasive in this regard was the fact that the prosecutor stated on the record that, but for the defense's strike, the prosecutor would have excluded Mr. Gros, a white male, on the same basis.
After Dabney was questioned by the court concerning his age, education and ability to understand, but before the judge ruled on the challenge, the prosecutor mentioned that his appearance was a second basis for her exclusion. In particular, she noted that he was wearing a gold and diamond earring which indicated to her involvement with drugs. The prosecutor also noted that this reflected upon how Dabney perceived himself. Appearance, and its significance, has also been found to be race-neutral basis for juror exclusion.
The trial judge found the State's explanations to be race-neutral. He concluded that the defendant had not established a discriminatory basis for exclusion. The determination as to whether the prosecutor has enunciated race-neutral reasons for using peremptory challenges to excuse African-American jurors is a factual one made by the trial judge, who has the benefit of hearing the voir dire questions and the answers of prospective jurors. Thus, the trial court's determination on a Batson claim is entitled to great deference on appellate review, and will not be disturbed unless the record indicates that any reasonable trial court must reach the conclusion that the prosecutor exercised peremptory challenges on the basis of a juror's race alone. State v. Nieves, supra, 653 So.2d at 685.
A review of the record as a whole and in particular the questions and responses during voir dire, indicates the trial judge did not abuse his considerable flexibility and broad discretion in finding that the defendant did not establish a prima facie case of discriminatory selection of jurors. Disproportionate strikes alone are not unconstitutional; proof of discriminatory intent or purpose is required. Hernandez v. New York, 500 U.S. 352, 360, 111 S.Ct. 1859, 1866, 114 L.Ed.2d 395. A prosecutor's explanation of his peremptory strikes will be deemed neutral unless a discriminatory intent is inherent therein. State v. Williams, 610 So.2d 991, 1002 (La.App. 1 Cir.1992). A review of the entire record fails to disclose any statements, questions or comments by the prosecutor that would establish any race-based exercise of peremptory challenges by the State. Additionally, defendant does not cite any such instances.
Furthermore, a review of the voir dire of the remaining excluded African-American jurors stricken by the State indicates *852 specific, objective and trial-related reasons for their exclusion. The exclusions were directly related to the potential jurors' responses during voir dire. Ms. Alexander was excluded because she preferred to see a weapon and she had family members arrested for drug violations. Ms. Thomas had a previous social relationship with the defendant. Mr. Givens had not been forthright about his son's mental problems. In addition, the record reveals the State's selection and exclusion of both Caucasians and African-Americans.
We find no merit in this assignment of error.
In the second assignment, defendant contends that sentences of ninety years of imprisonment for armed robbery and twenty years for attempted manslaughter are excessive. He reasons that these crimes were committed during a "drug induced/influenced binge." He also argues that he was otherwise a decent man who was employed and had a wife and children. The same claims were raised in defendant's written motion for reconsideration of sentence and were argued at the hearing on the motion to reconsider sentence. Following the hearing on the motion to reconsider sentence, the trial judge denied the motion.
At the time of this offense, the sentencing range for armed robbery was ten to ninety-nine years of imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. La. R.S. 14:64(B). The sentencing range for attempted manslaughter at the time of this offense was imprisonment at hard labor for not more than twenty years. La. R.S. 14:27; 14:31. In this case, the defendant received a sentence of ninety years at hard labor without benefit of parole, probation, or suspension on the armed robbery conviction, and twenty years at hard labor on the attempted manslaughter conviction.
The sentences were ordered to be served concurrently.
A sentence within statutory limits may nonetheless be constitutionally excessive. U.S. Const. amend. VIII; La. Const. of 1974, art. I, § 20. See, State v. Smith, 01-2574 (La.1/14/03), 839 So.2d 1, 4, reh'g denied, 01-2574 (La.3/21/03), 2003 La. LEXIS 735, citing State v. Sepulvado, 367 So.2d 762, 767 (La.1979). A sentence is constitutionally excessive when it imposes punishment grossly disproportionate to the severity of the offense or constitutes nothing more than a needless infliction of pain and suffering. See, State v. Smith, supra; State v. Weaver, 01-467 (La.1/15/02), 805 So.2d 166, 174.
In determining whether a sentence is excessive, the test imposed on the reviewing court is two-pronged. First, the record must show that the trial court took cognizance of the sentencing guidelines set forth in La.C.Cr.P. art. 894.1. State v. Lobato, 603 So.2d 739, 751 (La.1992); State v. Woodward, 02-1017 (La.App. 5 Cir. 3/25/03), 844 So.2d 236, 239-240. The trial judge "shall state for the record the considerations taken into account and the factual basis therefore in imposing sentence." La.C.Cr.P. art. 894.1(C); State v. Woodward, supra, 844 So.2d at 240. However, when the trial judge fails to articulate every circumstance listed in the sentencing guidelines, a remand is not necessary if there is an adequate factual basis for the sentence contained in the record. Id.
Important elements that should be considered are the defendant's personal history, prior criminal record, seriousness of the offense and the likelihood of rehabilitation. State v. Smith, 99-606 (La.7/6/00), 766 So.2d 501, 515, reh'g denied, 99-2015 (La.8/31/00), 766 So.2d 501. Past criminal behavior that does not *853 result in conviction is also a proper consideration at sentencing. State v. Marshall, 02-1067 (La.App. 5 Cir. 2/25/03), 841 So.2d 881, 893, writ denied, 03-909 (La.9/26/03), 854 So.2d 345.
After determining whether the provisions of La.C.Cr.P. art. 894.1 have been complied with by the trial court, the reviewing court must then determine whether the sentence imposed is too severe given the circumstances of the case and the background of the defendant. State v. Lobato, supra.
The sentencing court is given wide discretion in imposing a sentence within the statutory limits and such a sentence will not be set aside as excessive in the absence of a manifest abuse of discretion by the sentencing court. State v. Richmond, 98-1015 (La.App. 5 Cir. 3/10/99), 734 So.2d 33, 38. On appellate review of sentence, the only relevant question is whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate. State v. Smith, 839 So.2d at 4.
Before sentencing the defendant, the trial judge reviewed a number of factors that he was taking into consideration in sentencing the defendant. Prior to sentencing the defendant, the trial judge indicated he thought imprisonment was required for three reasons: (1) the defendant committed another crime; (2) defendant needed correctional treatment; and, (3) a lesser punishment would deprecate the seriousness of the offense.
The trial judge listed the following "aggravating circumstances" involved in these crimes as: (1) the defendant fired a semi-automatic weapon outside the store after the robbery; (2) deliberate cruelty was shown to the victim; (3) the defendant could have left the scene but chose not to do so and there was a struggle, and the victim was shot in the head; (4) the defendant received something of value for the crime (i.e., money); (5) defendant knowingly created a risk of harm by using a firearm and a tire tool to commit the crimes; (8) threats and violence were utilized in the commission of the offenses; (9) the passerby was shot at, according to the judge, because that person could have been a potential witness; and, (10) the armed robbery caused significant physical and economic injury in that the store's owner was shot in the head and a family was left without a "bread winner." He also noted that the victim did not have to die and defendant could have merely left the scene.
The trial judge also enumerated mitigating factors. The judge stated for the record that he considered the character letters written on defendant's behalf which indicated he had never committed a crime. He also took into consideration that the defendant was a good father to his five children. Finally, the judge noted that the defendant had no prior serious felonies on his record. He only had two misdemeanors (one which was an arrest only and the other a conviction for disturbing the peace).
It is apparent from the record that the trial judge considered both mitigating and aggravating circumstances as required by the sentencing guidelines set forth in La.C.Cr.P. art. 894.1. Although defendant urges his lack of criminal history and his personal history as a responsible husband and father as mitigation, it is clear from the record that these factors were taken into account during the sentencing. Additionally, although not specifically mentioned prior to sentence being imposed, it is apparent from the record that this judge, who also presided over the trial, was aware of defendant's claim that *854 he committed the crimes because he was under the influence of drugs at the time of the offenses. However, it is also recognized that the jury in convicting the defendant apparently repudiated this defense. The trial judge complied with the first prong of the two-prong sentencing test.
Having satisfied the first prong of the test, it must now be determined if the sentence is too severe given the circumstances of the case and the background of the offender. In the instant case, the armed robbery resulted in the death of the store owner. Additionally, this armed robbery was one of three committed during a thirteen-hour crime spree. We believe the sentence is not excessive given these facts.
The defendant was given the maximum sentence of twenty years for his conviction for attempted manslaughter. Maximum sentences are appropriately imposed only for the most serious violation of the described offense and for the worst kind of offender. State v. Jones, 398 So.2d 1049 (La.1981); State v. Farhood, 02-490 (La.App. 5 Cir. 03/25/03), 844 So.2d 217.
Perrilloux was charged with attempted second degree murder and the jury returned a responsive verdict of attempted manslaughter. The record reveals that the attempted manslaughter was one in a series of felonies defendant committed in a thirteen-hour time frame. Moreover, the record also indicates this felony occurred when defendant fired three shots from a semi-automatic weapon at mid-morning in the convenience store parking lot while aiming at a bystander. The bystander was a potential witness and was attempting to aid law enforcement in defendant's apprehension, by copying down defendant's license plate number. The maximum sentence of twenty years for attempted manslaughter is not excessive under the facts of this case.
Considering the facts of this case and the extensive reasons for sentence recited by the trial judge, these sentences do not constitute an abuse of the trial judge's sentencing discretion.
We have reviewed the record for errors patent in accordance with La.C.Cr.P. art. 920 and found that the trial court's advisory to the defendant concerning the prescriptive period for post-conviction relief under La.C.Cr.P. art. 930.8 is incorrect in that the trial court informed defendant that the commencement date of the prescriptive period ran from the day the sentence became final, rather than from the day the conviction and sentence became final. Accordingly, we instruct the trial court to send appropriate written notice to defendant of the exact statement of law regarding the prescriptive period for post conviction relief and to file proof in the record that defendant receive the notice. State v. Stelly, 98-578 (La.App. 5 Cir.12/16/98), 725 So.2d 562.
The defendant's convictions and sentences are affirmed and the matter is remanded to the trial court.
AFFIRMED AND REMANDED
NOTES
[1] Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).