THOMAS F. DALEY, Judge.
| ^Defendant, Tahira Smith, appeals her sentence for conviction of attempted first degree injuring of public records. She argues on appeal that her sentence was excessive. For the following reasons, we affirm.
This prosecution stems from the defendant’s alleged presentation of an altered proof of insurance card to a representative of the State Department of Motor Vehicles. Smith was charged with first degree injuring of public records, a violation of LSA-R.S. 14:132 A. Defendant was arraigned on August 18, 2004, and pled not guilty.
Defendant was tried by a jury of six on September 29, 2004. The jury returned a verdict of guilty of attempted first degree injuring of public records, a violation of LSA-R.S. 14:27 and LSA-R.S. 14:132 A.[1] Defendant filed two Motions for New Trial: the first on October 1, 2004, and the second on October 5, 2004.[2] Those mo *641 tions were argued and denied on October 15, 2004.
|3On December 16, 2004, the trial court sentenced defendant to twelve months at hard labor. Defendant filed a timely Motion to Reconsider Sentence on December 21, 2004. The court denied the motion, with written reasons, on January 4, 2005.
Defendant filed a timely Motion for Appeal on December 21, 2004. The trial court granted the motion on February 1, 2005.

FACTS

LSA R.S. 14:132 A states:
First degree injuring public records is the intentional removal, mutilation, destruction, alteration, falsification, or concealment of any record, document, or other thing, filed or deposited, by authority of law, in any public office or with any public officer.
Theresa Gendusa testified that she is a supervisor in the reinstatement division of the State motor vehicles office in Harvey. She stated that her department handles violations for failure to maintain automobile liability insurance. Gendusa said that if a driver is cited for failure to provide proof of insurance, the violation is recorded in her office’s computer database. This prevents the violator from obtaining or renewing a driver’s license until he or she has supplied valid proof of insurance and paid any outstanding fine.
Gendusa testified that because her job required her to check proof of insurance cards on a routine basis, she could easily recognize one that is fake or doctored. On June 1, 2004, Smith entered Gendusa’s office and submitted a proof of insurance card. Smith wished to clear a citation issued in Orleans Parish on October 2, 2003, for failure to show proof of insurance:’ Defendant’s insurance card bore the name Tahira R. Smith, and listed U.S. Agencies Casualty Insurance |4Company as the insurer. The insured vehicle was listed as a 1995 Mazda 626. Gendusa testified that the card did not appear to her to be authentic.
Gendusa cheeked a computer database to determine whether the insurance coverage reflected on Smith’s card had been recorded by the State. She explained that insurance companies are required by law to post their current automobile insurance policies on her department’s database. Gendusa found that the Mazda had last been insured on May 2, 2003, by the car’s previous owner. Smith had acquired the vehicle on June 26, 2003, and there was no evidence that she had ever insured it.
Gendusa testified that she asked Smith for some form of identification. Smith produced a State identification card. The card bore the name Tahira Smith, as well as a photograph of defendant. As was required under department policy, Gendu-sa reported Smith’s presentation of a iraudulent insurance card to the Louisiana State Police.
Trooper Robert Bennett, a defense witness, testified that he works with the insurance fraud unit of the State police. He received a report pertaining to the instant offense on June 16, 2004, and began an investigation. He checked the policy number listed on the invalid insurance card, and found that it was registered to one “ J. Smith” of Monroe. The officer testified he found no evidence that defendant, Tahira Smith, had ever been insured by U.S. Agencies. Computer records showed that she had last been insured by Government Employees Insurance Company (GEICO) under a policy terminating on May 2, 2003.
Bennett testified that Smith was employed as a criminal sheriffs deputy in Orleans Parish. He arrested her at her *642 place of employment, the Orleans Parish Correctional Facility.
IsSmith testified that she was not the person who appeared at the motor vehicles office on June 1, 2004. She said she had been a victim of identity theft. She explained that her automobile caught fire on April 19, 2004. When she fled from the burning car, she left her purse in the trunk. She returned to the car sometime later to find that it had been stripped of all her valuables. She believed that someone stole her purse and used the identification and other items it contained. Smith testified that she was not able to use her car after the fire. She said she was never ticketed in Orleans Parish for failure to maintain automobile insurance, and she had not seen her Louisiana identification card since the fire. Smith claimed to have been insured by Direct Auto Insurance in April of 2003, but said she did not have documentation of that coverage. She testified that she had a valid Georgia driver’s license, as she lives part-time in Atlanta. She said the license expired on June 4, 2004.
Smith testified that she was at work on June 1, 2004, and that she had never met Theresa Gendusa. But she said she did not have witnesses to vouch for her whereabouts that day.

ASSIGNMENT OF ERROR NUMBER ONE

Smith contends that her twelvemonth sentence for attempted first degree injuring of public records is constitutionally and statutorily excessive. Defendant filed a timely Motion to Reconsider Sentence in the trial court on December 21, 2004, challenging her sentence based on ten specific grounds. The trial court denied the motion on January 4, 2005. Defendant now raises some of those claims on appeal, albeit in a more general manner.
The Eighth Amendment to the United States Constitution and Article I, Section 20 of the Louisiana Constitution prohibit the imposition of cruel or | ^excessive punishment. A sentence is excessive if it is grossly disproportionate to the seriousness of the offense so as to shock our sense of justice, or if it imposes needless and purposeless pain and suffering.[3]
The reviewing court uses a two-pronged test in determining whether a sentence is excessive. First, the record must show that the trial court took into account the sentencing provisions in LSA-C.Cr.P. art. 894.1.[4] While the trial court need not articulate every aggravating and mitigating circumstance outlined in the sentencing guidelines, the record must reflect that the court adequately considered those guidelines in particularizing the sentence to the defendant.[5] After determining whether the trial court has complied with the provisions of Article 894.1, the reviewing court must determine whether the sentence imposed is too severe given the circumstances of the case and the background of the defendant.[6]
A sentence within statutory limits will not be set aside as excessive absent *643 manifest abuse of discretion.[7] On appellate review of sentence, the only relevant question is “whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate.”[8]
The trial court heard witnesses from both the State and the defense before sentencing defendant. Trooper Robert Bennett testified for the State. He said that, upon the prosecutor’s request, he checked the information defendant gave during her trial testimony. Bennett said he contacted Direct Auto, the company with whom defendant claimed to have been insured. He learned that no one with defendant’s name or Social Security number had been insured by the company in ^Louisiana or Georgia. Moreover, Bennett found that there was nothing in police computer records to show that anyone named Tahira Smith had ever had a Georgia driver’s license. In support of his testimony, Bennett produced a printout of his search on the police computer, and a letter from Direct Auto stating that the company had not insured defendant.
The defense produced several character witnesses. Lillian Johnson testified that she is defendant’s first cousin, and she associates with defendant on a regular basis. Defendant is a regular churchgoer, and is a good mother.
Shirley Smith testified that she is defendant’s grandmother. She helped to raise defendant. Ms. Smith said she is seventy-one years old, and has health problems. Defendant goes to her house daily to take care of her. Ms. Smith characterized defendant as a good mother who is involved with her children’s school.
Marilyn Wilson testified that defendant is her niece. Wilson said she has known defendant all of her life, and characterized her as a warm, friendly person who is dedicated to her children and family.
Devin and Tyrone Smith, ages ten and five, testified that defendant is their mother. She loves them and takes care of them.
Smith testified at the hearing that she was working two jobs, as a nanny and a security guard. She said there would be no immediate family to take care of her children if she received a prison sentence. Defendant testified that she had believed she had automobile insurance at the time of the incident, and that she had not set out to deceive the court through her trial testimony.
In imposing sentence, the judge commented that defendant’s testimony at trial and at the sentencing hearing had been full of calculated lies. The judge said, in part:
1RI might add that in most cases [the lies] were on material issues, which means she committed perjury. And after the trial, ... she then started working on my sympathy and did a good job on it except that she was telling one lie after another at that time.
I specifically asked her, do you have anybody in this area that could take care of the children and she said, no, I have nobody whatsoever. Nobody. Every member of my family is in Atlanta. Nobody is here and so forth. And I found out later that even as we spoke, the children were with their grandmother. Who, by the way, impresses me. The only people I feel sorry for here are the *644 relatives and particularly her children and grandmother who came up here and testified. I know that they are in good faith and I know that they — Everything that they said, they believe in their hearts is true. But I cannot condone somebody who gets not only convicted of a crime on solid evidence, but also lies the entire time and then lies after the trial again. The only reason that I’m not going to give her two-and-a-half years at hard labor is because of her children and the job that [defense counsel] did.
In denying defendant’s Motion to Reconsider Sentence, the judge wrote:
This [court] afforded a very lengthy sentencing hearing to defendant, and heard testimony of numerous witnesses, referred to during hearings a(sic) “voters.”[9] Defendant CLEARLY committed perjury therein. At the conclusion, defendant fought with the bailiff and refused to be taken into custody. Her family [and] witnesses surrounded her and joined the struggle. All were screaming. (Emphasis in the original).
Defendant’s sentencing exposure was zero to two and one-half years, with or without hard labor. The court might also have imposed a fine of up to $2,500.00. LSA-R.S. 14:27; LSA-R.S. 14:132 C(l). Defendant now argues that, as a first offender and a single mother, she should have received a lesser sentence.
The trial judge recognized defendant’s first offender status and considered the fact that she was a single mother. In fact, the judge declined to impose the maximum penalty based on his concern for defendant’s two young children. But the judge clearly did not feel that the mitigating factors outweighed the fact that defendant lied repeatedly under oath. The judge was also influenced by 1qdefendant’s apparent lack of remorse. Even when the prosecutor and the judge exposed her lies, she denied that it was her intention to mislead the court.
Based on the foregoing, the sentence imposed is supported by the record. The trial judge did not abuse his broad sentencing discretion.

ASSIGNMENT OF ERROR NUMBER TWO

Defendant requests that this Court perform a review of the record for errors patent. This Court routinely reviews all appeal records for errors patent in accordance with LSA-C.Cr.P. art. 920.[10] A review of the instant record reveals the following error:
The trial court erred in failing to advise defendant of the two-year prescriptive period for filing a post-conviction relief application under LSA-C.Cr.P. art. 930.8.[11] We hereby order the trial court to correct the error by providing defendant with written notice of the prescriptive period, and filing written proof of said notice in the record.[12]

*645
AFFIRMED; REMANDED WITH INSTRUCTIONS.

. The jury polling is not included in the transcript, but the polling slips are part of the appeal record.

. A third new trial motion, filed on October 8, 2004, was a duplicate of the second motion.

. State v. Lobato, 603 So.2d 739, 751 (La.1992); State v. Brown, 01-160, p. 14 (La.App. 5 Cir. 5/30/01), 788 So.2d 667, 674.

. State v. Lobato, supra; State v. Perrilloux, 03-917, p. 13 (La.App. 5 Cir. 12/30/03), 864 So.2d 843, 852, writ denied, 04-0418 (La.6/25/04), 876 So.2d 830.

. State v. Perrilloux, supra.

. State v. Lobato, supra; State v. Perrilloux, 03-917 at p. 13, 864 So.2d at 853.

. State v. Lobato, supra; State v. Farhood, 02-490, p. 11 (La.App. 5 Cir. 3/25/03), 844 So.2d 217, 225.

. State v. Humphrey, 445 So.2d 1155, 1165 (La.1984) (citing State v. Williams, 412 So.2d 1327 (La.1982)). See also, State v. Farhood, supra.

. At the sentencing hearing, defense counsel asked some of the defense witnesses whether they were registered voters.

. See, State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Wetland, 556 So.2d 175 (La.App. 5 Cir.1990).

. The commitment reflects that the court advised the defendant of the prescriptive period under Article 930.8, but there is no evidence in the transcript that such was the case. Where the transcript and the minute entry conflict, the transcript prevails. State v. Lynch, 441 So.2d 732, 734 (La.1983).

. See, State v. Taylor, 04-90, p. 14 (La.App. 5 Cir. 5/26/04), 875 So.2d 962, 972, writ denied, 04-1649 (La. 11/19/04), 888 So.2d 193.