820 So.2d 471 (2002)
STATE of Louisiana
v.
Edward Irvin HARRIS.
No. 2001-KA-0408.
Supreme Court of Louisiana.
June 21, 2002.
*472 G. Benjamin Cohen, Clive Adrian Stafford Smith, New Orleans, Counsel for Applicant.
Richard P. Ieyoub, Attorney General, Paul D. Connick, Jr., District Attorney, Rebecca J. Becker, Terry M. Boudreaux, Gretna, Caren M. Morgan, New Orleans, Counsel for Respondent.
Harold P. DuCloux, III, New Orleans, Geroge H. Kendall, Counsel for NAACP Legal Defense & Educational Fund (Amicus Curiae).
TRAYLOR, J.
A jury convicted the defendant, Edward Irvin Harris, of two counts of first degree murder and sentenced him to death for the deaths of Tamyra Frazier and Mister Gordon. This is a direct appeal from that conviction and sentence. La. Const. art. V, § 5(D)(2). The defendant raises numerous assignments of error, including the failure of the trial court to sustain his challenge for cause of venireman Brown. We find merit to the latter argument, and, for the reasons set forth more fully below, we reverse and vacate the conviction and death sentence, and remand for a new trial.

FACTS
On October 14, 1994, around 3:00 p.m., the defendant and his cousin circled the 1600 block of Betty Street in Marrero, Louisiana, apparently looking for Mister Gordon, who was involved in an ongoing dispute with the defendant over a drug deal gone awry. On one of these trips around the block, the defendant approached the stop sign at Betty Street, motioned to another car to proceed through the intersection first, then turned on to Betty Street. The defendant then noticed Gordon, who was walking with his girlfriend, 19-year-old Tamyra Frazier. The defendant and Gordon exchanged words, and the defendant began shooting. His first shot struck Frazier in the back, severing her aorta, causing her death within minutes. Defendant's remaining four shots struck Gordon, who was rushed to the hospital.
Alisha Brown, and her cousin Erica Baptiste, both friends of the defendant, were on Betty Street at the time of the shooting. They stated that they observed a tannish-brown colored Regal, with a tan top, stop at a stop sign, allowing them to cross the street. The defendant was on the passenger side of the car. Both girls watched as the defendant reached across the driver with a gun, and shot the victims. The car then sped off.
Police and paramedics arrived shortly after the shooting, and pronounced Tamyra Frazier dead at the scene. Emergency personnel also tended to Mister Gordon, and while still at the scene of the shooting, police removed from his waistband a gun and a bag containing several rocks of cocaine. Paramedics then transported him to the hospital, where he told a nurse and a detective that "Irvin" shot him. Gordon died in surgery.
On October 14, 1994, the district court issued an arrest warrant. The defendant *473 turned himself in two days later and was subsequently indicted by a grand jury for first degree murder.
The defendant's trial began on November 28, 1995. At trial, the defendant testified that he had killed Gordon in self defense, and killed Frazier by accident. However, the jury found the defendant's account of events unconvincing, and on December 1, 1995, found him guilty as charged of two counts of first degree murder. In the penalty phase that followed, the jury recommended a sentence of death.

DISCUSSION

Batson Challenges
Both in this state and throughout the nation, the law is firmly settled that peremptory strikes may not be based on race in either criminal or civil cases. See Batson v. Kentucky, 476 U.S. at 89, 106 S.Ct. at 1719 (dealing with prosecutor's strikes); Georgia v. McCollum, 505 U.S. 42, 59, 112 S.Ct. 2348, 120 L.Ed.2d 33 (1992) (dealing with defense strikes in criminal trials); Edmonson v. Leesville Concrete Co., 500 U.S. 614, 631, 111 S.Ct. 2077, 114 L.Ed.2d 660 (1991) (dealing with civil trials); State v. Collier, 553 So.2d 815, 817 (La.1989) (holding that un-rebutted prima facie case requires reversal; La. C. Cr. P. art. 795(c)). If it appears that one party is using its peremptory strikes in a discriminatory manner, the other party may raise the issue by making what has come to be known as a Batson objection. State v. Myers 99-1803 (La.4/11/00), 761 So.2d 498, 500. In several assignments of error, the defendant argues that the state exercised its peremptory challenges in a racially discriminatory manner in violation of Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).
In Batson v. Kentucky, supra, the United States Supreme Court held that the Equal Protection Clause forbids the use of peremptory strikes to challenge potential jurors solely on account of their race or the assumption that members of a certain race will be unable to impartially consider the case before them. The Court concluded that such discriminatory practices in the use of peremptory challenges denies a defendant equal protection of the law and unconstitutionally discriminates against the potential juror in violation of the Fourteenth Amendment. Id. at 84-89, 106 S.Ct. at 1716-19.
To assure such discrimination does not occur, the Court, in Batson, established a three-part framework to be employed in evaluating an equal protection challenge to a prosecutor's use of a peremptory strike. First, the defendant must make a prima facie showing of discrimination in the prosecutor's use of the strike.[1] If he fulfills this requirement, then the prosecutor must offer a race-neutral explanation for the challenge. Purkett v. Elem, 514 U.S. 765, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995)(per curiam) (citations omitted); State v. Collier, 553 So.2d 815, 818 (La. 1989). This is a burden of production, not one of persuasion. Then, the trial court must decide whether the defendant has carried the ultimate burden of proving that the strike constituted purposeful discrimination on the basis of race. See Batson, *474 476 U.S. at 89, 106 S.Ct. at 1719; Hernandez v. New York, 500 U.S. 352, 358-59, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991).
In the instant case, the defendant claims that the state exercised peremptory challenges on the basis of race when it struck venirepersons Brown, Poch, and Davis. At the start of jury selection, both parties accepted the first two venire persons, both of whom are white.[2] When presented with the first African American panel member, Poch, the state exercised its first peremptory challenge, excusing her. Apparently acting to preserve the issue in the event that a pattern arose, the defendant objected. The trial court ruled that the defense had not established that the state engaged in a pattern of discrimination. Next, both parties accepted Uzee, a white female.[3] The state then challenged the fifth venireperson, Brown, a black male, peremptorily, and the defense again objected. The following colloquy ensued:
[State]: You want me to answer about Ms. Poch, or Mr. Brown, or both?
The Court: Well, you have to answer them both now, because the pattern has been struck.
[discussion about which assistant district attorney will speak for the state]
[Defense]: I challenge that they're cutting all the blacks on the jury, and that they're cutting by race, they're making a decision based on race. There's Batson and the concurrent jurisprudence on that says that you cannot do that.
[State]: Okay, just as long as he's aware that Batson is an old case
[Defense]: I know it's an old case. I mean, Batson and its progeny.
[State]: There's a law that's changed Batson someI don't have any problem with putting our reasons on the record. I don't know that we need to do that, but I will, in an abundance of caution and at the court's request, I'll certainly do that.
I reviewed my notes yesterday concerning Ms. Poch. Ms. Poch stated very clearly yesterday that she had a great deal of trouble with the death penalty. I'm still concerned about that issue that Judgethe court denied any challenges for cause on her, but my notes reflect that she stated that she had a great deal of difficulty in posing [sic] the death penalty, thatI think her exact words were "can't take it back." She wants strong evidence and "can't take it back."
[Defense]: Note our objection.
[State]: And although Mr. Brown appeared attentive to most of what was going on, he seemed a little confused as to the difference between the civil and criminal standard. And he's also the only single black male on the panel with no children.
The Court: He's what?
[State]: He's a single black male on the panel with no children.
The Court: What does that have to do with
[State]: Well, I don't want him relating to the defendant more so than he would the State's part of the case. I would prefer to have older jurors or *475 jurors with children, particularly if I'm dealing with men.
Mr. Brown also waffled a little bit back and forth yesterday, I believe, on the death penalty issues, but my notes are not as clear on him as they are on Ms. Poch.
[More discussion on who will speak for the state]
[State]: [The state's concerns with] Mr. Brown are more related to the information that I got today than yesterday, anyway; the basic two reasons being, one, he lives in Harvey, which is the area where this happened, and I don't want him drawing any conclusions based on what he knows or doesn't know about the area or the neighborhood, and that he's single
The Court: All right.
[State]:has no children.
The Court: I'm going to deny the motion, finding that the State has articulated non-racial, neutral reasons for excusing these two jurors.
[Defense]: Note the defense's objection.
(emphasis added).
During the close of voir dire, the state backstruck Davis, leaving only one African American on the jury.
The trial court ruled that the defendant established a pattern of non race neutral challenges by the state and ordered that the state provide a justification for its challenge of Brown. The state offered the above-claimed race neutral justifications for removal, namely, that Brown seemed a little confused as to the difference between the civil and criminal standard, that he was the only single black male on the panel with no children, and that he lives in Harvey. The above exchange indicates that the trial court found such reasons persuasive under step three of the Batson analysis. However, defendant contests this finding, claiming that the state's proffered justification was anything but race neutral. We agree with defendant's contention.
Defendant points to several problems with the state's articulated reasons. The state claimed that it was challenging Brown because he "seemed a little confused as to the difference between the civil and criminal standard," then added, and repeated, that Brown is "also the only single black male on the panel with no children." The state further explained that it did not "want [Brown] relating to the defendant more so than he would the State's part of the case." Only after this justification seemed to fall flat, the state offered that it wished to strike Brown because "he lives in Harvey[,]" which is near where the killings took place. Based on the reasons given by the state, we apply the framework of Batson, and determine whether the state's reasons were truly racial neutral.
The state rested its challenge of Brown on the fact that he lived in Harvey, and thus near the crime scene. While some courts have held such a justification acceptable despite the fact that location could be used as a proxy for excluding venire members of a particular race, others have not. See, e.g., Brownlee v. State, 535 So.2d 221, 223 (Ala.Crim.App.1988) (allowing strike of juror who lived in general area of crime); People v. Davis, 189 Cal. App.3d 1177, 234 Cal.Rptr. 859, 869 (1987) (allowing strike of juror from suburb adjacent to suburb where crime had occurred); People v. Andrews, 155 Ill.2d 286, 185 Ill. Dec. 499, 614 N.E.2d 1184, 1189-93 (1993) (allowing strikes of jurors same age as defendant, with children same age as defendant, or residing near crime scene). In addition, other courts have adopted the rule that before a court finds a peremptory challenge race neutral in a case in which a prosecutor infers a bias due to the proximity *476 of the venireperson's residence to the crime scene, the prosecution must establish through further inquiry and explanation that such a bias actually exists. Duncan v. State, 612 So.2d 1304, 1309 (Ala.Cr. App.1992) (discussing Williams v. State, 548 So.2d 501 (Ala.Cr.App.1988)). Further, the fact that potential jurors are challenged on the basis of a claimed bias, without being questioned about such bias, "raises a strong inference that they were excluded on the basis of race alone." Williams, 548 So.2d at 507; cf. Splunge v. Clark, 960 F.2d 705, 707-08 (7th Cir.1992) (explanation that venireman didn't understand burden of proof insufficient when prosecutor asks venireman whether the fact that both venireman and defendant are black would affect deliberations, but fails to ask more than one question about the burden of proof). We find the state's explanation that its sole reason for excluding Brown was based on his residency unpersuasive and was simply a pretext to its true reason, that the state excused Brown because of his race.
The state also proffered that it was striking Brown because he was single and had no children.[4] This justification is also unpersuasive as the record reflects that the state did not attempt to strike childless single white male venirepersons Louviere, Bordelon, Hidalgo, Lasana, or Daigle.[5] Accordingly, when examined alongside the state's earlier race based comments, as well as the childless single white veniremen the state did not challenge, the state again failed to develop sufficient basis for its challenge. See, e.g., State v. Collier, 553 So.2d 815, 822 (La.1989) (rejecting explanations when prosecution failed to exclude other prospective jurors, "who were not of a racial group, who shared the same characteristic as that claimed as the reason for the challenge."); State v. Knighten, 609 So.2d 950, 958 (La.App. 4th Cir.1992) (same); Andrews, 185 Ill.Dec. 499, 614 N.E.2d at 1189 ("[W]here the State fails to exclude white venire members having the same characteristic as a black venire member who was excused on the basis of that characteristic, an inference of purposeful racial discrimination is raised.") (citing cases).
Yet another claimed justification for challenging Brown is that he appeared to have had difficulty understanding the difference between "preponderance of the evidence" and "beyond a reasonable doubt.[6]" In at least one case, such a reason has been upheld as acceptable. State v. Smith, 222 Conn. 1, 608 A.2d 63, 70 (1992) (upholding challenge of juror with "difficulty understanding legal concepts" based inter alia on such difficulty). However, another court has found that basing a challenge on such a misunderstanding could also be pretext. Splunge, 960 F.2d at 708. In the instant case, such confusion, if in fact harbored by Brown, would have helped the state, as Brown may have held the state to a lesser standard of proof. Accordingly, when examined in context of the state's overt mention of Brown's race, as well as its "scattershot" attempts to put forth racially neutral explanations without developing a basis for such, the state's *477 attempt to explain its peremptory challenge of Brown appears pretextual.
A finding that the state's reasons for dismissing Brown were based on race is further supported in the instant case by the overt statement of the prosecutor that she was challenging Brown because he was the "only single black male on the panel with no children." This justification explicitly places the defendant's race at issue, and is thus not race neutral. See e.g., Goggins v. State, 529 So.2d 649, 651-52 (Miss.1988) (challenge based on belief that blacks more favorable to black defendant invalid); State v. Blackmon, 744 S.W.2d 482, 486 (Mo.Ct.App.1988) (same); see also Owens v. State, 531 So.2d 22, 26 (Ala.Cr. App.1987) (rejecting trial court's conclusion that consideration of race among other factors race neutral). Furthermore, in similar situations, trial courts have properly disallowed attempted peremptory challenges, finding them mere pretext. See, e.g., Marks v. State, 581 So.2d 1182, 1187 (Ala.Cr.App.1990)(rejecting state's attempt to strike on claimed basis that venireman single and unemployed). Appellate courts have also found equal protection violations when prosecutors offer the venireperson's predominantly black neighborhood as justification, without connecting it to the case. United States v. Bishop, 959 F.2d 820, 825-26 (9th Cir.1992). The prosecutor in the instant case, in addition to giving thinly veiled reasons similar to those mentioned above, explicitly stated that she struck Brown because he was black.
Accordingly, in its dismissal of Brown, the state has "consciously taken color into account," Cassell v. Texas, 339 U.S. 282, 295, 70 S.Ct. 629, 636, 94 L.Ed. 839 (1950), and violated the defendant's constitutional right to equal protection. Batson, 476 U.S. at 86, 106 S.Ct. at 1717 ("`The very idea of a jury is a body ... composed of the peers or equals of the person whose rights it is selected or summoned to determine; that is, of his neighbors, fellows, associates, people having the same legal status in society as that which he holds.'") (quoting Strauder v. West Virginia, 100 U.S. 303, 308, 25 L.Ed. 664 (1880)). This error is a structural one, affecting the framework within which the trial proceeded, thus, we find that the defendant is entitled to a new trial.
We conclude that the manner in which the state sought to dismiss jurors in this case, based solely on race, amounts to a violation of defendant's constitutional rights. As we find this error alone constitutes a reversal of the conviction and sentence, we pretermit the remaining assignments of error.

CONCLUSION
For the foregoing reasons, we find the trial judge erred in allowing the state to dismiss juror Brown, and find this error raises serious federal constitutional equal protection issues affecting the rights of both the defendant and the excused venirepersons. Thus, defendant's conviction is reversed and the case remanded to the trial court for a new trial.

DECREE
For the reasons assigned herein, the defendant's conviction and death sentence are reversed.
REVERSED AND REMANDED.
NOTES
[1] The combination of factors needed to establish a prima facie case are: (1) the defendant must demonstrate that the prosecutor's challenge was directed at a member of a cognizable group; (2) the defendant must then show the challenge was peremptory rather than for cause (i.e., "peremptory challenges constitute a jury selection practice that permits `those to discriminate who are of a mind to discriminate'"); and (3) finally, the defendant must show circumstances sufficient to raise an inference that the prosecutor struck the venireperson on account of race. Batson, 476 U.S. at 96, 106 S.Ct. at 1723.
[2] The defendant's appellate brief indicates, and the state did not dispute, that venireperson Lester is white. Further, the second venireperson, Ferrara, was the subject of the state's McCollum challenge, and is therefore presumably white.
[3] The defendant's appellate brief again indicates that Uzee is white, and the state does not disagree.
[4] The record reveals that the state never asked Brown whether he had children. Although Brown did not mention that he had children in response to the court's general questioning, Brown did have four children at the time of the trial.
[5] Although the state did backstrike one single white male, Brammell, it did so for the apparent purpose of leaving additional backstrikes available, as Brammell would have completed the jury.
[6] Despite the State's contention, the record reflects that Brown articulated a proper understanding of the burden of proof in a criminal trial.