888 So.2d 329 (2004)
STATE of Louisiana
v.
Eddie GIVENS.
No. 2004-KA-0765.
Court of Appeal of Louisiana, Fourth Circuit.
October 27, 2004.
*331 Eddie J. Jordan, Jr., District Attorney, Claire Devidas, Assistant District Attorney, New Orleans, LA, for Plaintiff/Appellee.
Clive Stafford Smith, Christine Lehmann, New Orleans, LA, for Defendant/Appellant.
(Court Composed of Judge PATRICIA RIVET MURRAY, Judge TERRI F. LOVE, and Judge MAX N. TOBIAS, JR.).
MAX N. TOBIAS, JR., Judge.
The defendant, Eddie Givens ("Givens"), appeals the trial judge's finding that the district attorney provided gender-neutral reasons for striking male jurors at an evidentiary hearing.
On 30 May 1997, Eddie Givens was convicted by a twelve-person jury of two counts of aggravated rape, one count of aggravated burglary, one count of armed robbery, one count of simple burglary, and one count of attempted simple burglary. He was sentenced as follows: to life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence for each of the aggravated rape convictions; to thirty years at hard labor on the aggravated burglary conviction; to ninety-nine years at hard labor without benefit of parole, probation, or suspension of sentence for armed robbery; to twelve years at hard labor with the first year to be served without benefit of parole, probation, or suspension of sentence on the simple burglary of an inhabited dwelling; and to three and one-half years at hard labor for attempted simple robbery. The sentences on one count of aggravated rape, the aggravated burglary, and the attempted simple robbery are to run concurrently with each other and consecutively to the sentences on the second count of aggravated rape, the aggravated burglary, and the armed robbery. The sentences on the second group of convictions are to run concurrently with each other also.
Givens appealed, and this Court affirmed his convictions and sentences. State v. Givens, 98-0007 (La.App. 4 Cir. 12/08/99), 750 So.2d 242. Givens applied for a Writ of Certiorari, and the Supreme Court granted the writ. State v. Givens, 99-3518 (La.9/15/00), 767 So.2d 698. The Supreme Court held that Givens had established a prima facie case of gender discrimination and remanded the case to the trial court for a hearing at which the state could present gender-neutral reasons for peremptory strikes of potential male jurors. State v. Givens, 99-3518 (La.1/17/01), 776 So.2d 443.
At the hearing on 12 December 2003, after testimony from the two prosecutors at the trial of 30 May 1997, the trial judge held that the exercise of challenges by the state was based on gender-neutral reasons. Givens, through counsel, objected and now appeals that decision.
The actual facts of the case are not at issue here and no errors patent exist.
Our examination of voir dire examination of the jurors discloses the following: The jury consisted of eleven women and one man, with an additional man and woman serving as alternates. The state struck a total of six men and six women and an additional woman as an alternate strike. The defense struck two men and nine women.
*332 On the first venire panel of eighteen people, there were three men. All three were cut: Mr. Newton was struck for cause, the state struck Mr. Harris, and the defense struck Mr. Lindermann. The state peremptorily struck five women and the defense peremptorily struck three women. Two women were struck for cause.
The second panel consisted of six men and twelve women. The state peremptorily struck five of the men and the defense peremptorily struck one man. The state peremptorily struck one woman and the defense peremptorily struck four women; one woman was stricken for cause. Givens made a Batson objection after the state struck two men in this group of jurors.[1] The state accepted one man, Mr. Bundy, but struck another. Givens renewed his Batson objection. The trial court again denied the challenge. Another man, Mr. Jones, was accepted by both the state and defense; Givens then used a back-strike to remove Mr. Bundy. The state, in turn used a back-strike to remove Mr. Jones; again, the trial court denied Givens' Batson challenge. The defense attorney pointed out that the jury then consisted of six women and no men and that the state had struck three men while the defense had struck only one. The trial court denied the objection.
The third panel was made up of five men and thirteen women. One man was struck for cause, one was accepted for the jury, and the third man served as an alternate juror. The defense objected again when the state cut another man, and the trial court again denied the objection. The jury was completed after the third group.

ASSIGNMENT OF ERROR NUMBER 1
In the first assignment, Givens argues that in denying him the right to rebut the state's proffered reasons for striking male jurors and in failing to scrutinize those reasons, the trial court failed to engage in the third step of analysis required under J.E.B. v. Alabama ex rel. T.B., 511 U.S. 127, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994), and thus applied the wrong standard of law.
The Supreme Court in J.E.B. looked to the constitutional basis for striking a potential juror and stated:
In Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), this Court held that the Equal Protection Clause of the Fourteenth Amendment governs the exercise of peremptory challenges by a prosecutor in a criminal trial. The Court explained that although a defendant has "no right to a `petit jury composed in whole or in part of persons of his own race'" [citations omitted], the "defendant does have the right to be tried by a jury whose members are selected pursuant to nondiscriminatory criteria."
Id., 511 U.S. at 128, 114 S.Ct. at 1421.
After examining recent cases concerning the scope of Batson, the court concluded that the Equal Protection Clause also forbids intentional discrimination on the basis of gender. Furthermore, the test for determining whether a peremptory challenge should be disqualified for cause is the same as that in Batson cases; the court explained:
... [A] party alleging gender discrimination must make a prima facie showing of intentional discrimination before the party exercising the challenge is required to explain the basis for the strike. [Citation omitted]. When an explanation is required, it need not rise to the *333 level for a "for cause" challenge; rather, it merely must be based on a juror characteristic other than gender, and the proffered explanation may not be pretextual.
Id., 511 U.S. at 144-145, 114 S.Ct. at 1429-30.
In the case at bar, the Louisiana Supreme Court stated a three-step test:
If a prima facie case is established [by the party challenging the strike], the burden shifts to the opposing party to articulate a gender or race-neutral explanation for the strike. Then, the trial court must determine whether the party challenging the strike has carried the ultimate burden of proving purposeful discrimination.
State v. Givens, p. 5, 776 So.2d at 448.
The Supreme Court in this case found that the defense established a prima facie showing of discrimination  thus fulfilling the first step of the test enunciated above  and remanded the case for a hearing so that the second and third steps could be completed.
At the hearing on 12 December 2003, the two assistant district attorneys involved in the voir dire during the 1997 trial testified as to their reasons for striking six men. The trial court then determined that "the exercise of the challenges by the state ... were for reasons that are gender neutral." Givens contends that he should have had an opportunity prior to the trial court's decision to rebut the state's reasons. However, the test explained above does not provide that the defense has another chance to make its case after the state gives its reasons. Furthermore, the transcript of the hearing indicates that defense counsel was able to cross-examine the assistant district attorney witnesses and to make many of his rebuttal arguments to the trial court. Moreover, prior to rendering his decision, the trial judge asked Givens' attorney if he wanted to offer anything else or make an oral or written presentation. The defense attorney made a brief oral statement and submitted the case.
Givens also complains that the trial court misunderstood the law in that the court noted that peremptory challenges can be made for no reason at all, and yet, if there is an objection under Batson or J.E.B., the state must show that the potential juror was stuck for race-neutral or gender-neutral reasons.[2] At the hearing the trial judge articulated his concerns respecting the difficulty of Batson (and presumably J.E.B.) challenges by noting that those cases would "make sense" only if peremptory challenges were abolished so that all jurors were excluded for cause. The court found the situation imposed by having to give a reason where no reason is required  except a race or gender-neutral reason  illogical. Having explained this conundrum, with which we do not disagree, the court declared that the exercise of the challenges by the state was gender-neutral. In J.E.B. the court specifically stated that an objection need not rise to the level of a "cause" challenge; it simply must be based on a characteristic other than gender. J.E.B., 511 U.S. at 144-145, 114 S.Ct. at 1430. Furthermore, in Purkett v. Elem, 514 U.S. 765, 768, 115 S.Ct. 1769, 1771, 131 L.Ed.2d 834 (1995), the court stated, "the second step of this process does not demand an explanation that is persuasive or even plausible." Citing Hernandez v. New York, 500 U.S. 352, 360, 111 S.Ct. 1859, 1866, 114 L.Ed.2d 395 (1991), the court in Purkett declared that at the second "step of the inquiry, the issue is the facial validity of the prosecutor's *334 explanation," and "[u]nless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral." In the case at bar, the trial judge's comments do not appear to indicate a misunderstanding of the law but rather a perception of the innate incongruity of the law.
In summary, we find that Givens got that which was legally due him at the hearing when he was afforded an opportunity to cross-examine the prosecutors and to offer written or oral arguments. The trial court did not fail to scrutinize the state's reasons; the correct standard of law was applied in this case.[3]
No merit exists in this assignment.

ASSIGNMENT OF ERROR NUMBER 2
The defense's second assignment of error  that the trial judge failed to consider relevant evidence of each of its proffered reasons  is a multi-part restatement of his first assignment. Givens complains that the trial judge erred in refusing to hear specific facts that the defense intended to present but was not permitted to offer. Givens has proffered that evidence for this court's consideration. As has been noted, however, the three-step procedure of a J.E.B. hearing does not include rebuttal time for the defendant after the state makes its case. Furthermore, the trial judge offered Givens' attorney an opportunity to present additional evidence at the December 2003 hearing, and the attorney submitted the matter without offering any additional evidence.
Givens first claims that the trial judge failed to allow testimony concerning the discriminatory policy of the district attorney's office. Givens wanted the judge to consider "strike patterns, disparate impact, and discriminatory motive" on the state's part because such evidence would show that the state's "reasons" were pretextual. Givens cites Miller-El v. Cockrell, 537 U.S. 322, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003), to support his argument. That case, however, concerns a prisoner's right to obtain a certificate of appealability ("COA") in order to obtain review of the district court's denial of habeas corpus relief. The court noted that a COA would be issued only on a "substantial showing of the denial of a constitutional right." Id., 537 U.S. at 330, 123 S.Ct. at 1036. The prisoner made a Batson claim and  although Miller-El was heard prior to the Batson decision, Batson having come down while Miller-El was on appeal  the prisoner argued that at voir dire potential jurors were questioned differently according to their race,[4] that a practice of "shuffling" enabled the prosecution to move preferable venire members forward and less favorable ones to the back of the *335 panel so that they were unlikely to be questioned and therefore to serve, and that the district attorney's office had a long-held policy of excluding minorities that was memorialized in a document that remained in circulation. Considering these arguments, the Supreme Court held that a COA should have issued. The issue in Miller-El was not whether the prisoner could present his argument at step three of a J.E.B. hearing but whether an inference existed of discrimination so as to support a prima facie case. Thus, Miller-El is distinguishable from the case at bar.
In his next argument, Givens contends that the trial judge erred in refusing to hear evidence that women jurors are more likely than men to convict in a rape case. At the hearing, Givens' attorney attempted to question one of the assistant district attorneys about whether he agreed with that statement, and when the state objected, the judge sustained the objection. Givens' attorney then proffered the statement. As the state points out in its brief, the defense had made its prima facie case, and its question is irrelevant during the second phase of the hearing.
Givens next maintains that the trial judge erred in failing to hear evidence (a) that the state's gender-neutral reasons for striking men applied equally to female jurors that the state did not strike, and (b) that certain female jurors appeared to be less favorable to the state than males except for their gender.
When Givens' attorney began to make the first argument above at the hearing, the trial judge pointed out that the state needed no cause to strike jurors unless they were challenged under Batson or J.E.B. and so the argument was irrelevant. Givens cites several cases in support of his position. State v. Harris, XXXX-XXXX (La.6/21/02), 820 So.2d 471, is cited for the proposition that a neutral characteristic, such as childlessness, is not a sufficient reason to strike an African-American when it was not used to strike Caucasians. However, in Harris, the prosecutor specifically stated that the juror was struck because he was "the only single black male on the panel with no children."[5]Id., p. 5, 820 So.2d at 474. Thus, the juror's race was given as an overt reason the strike.
Givens also cites State v. Knighten, 609 So.2d 950 (La.App. 4 Cir.1992), where this court found that the trial court erred in accepting alleged prior arrests as race-neutral reasons for two of the prosecutor's peremptory challenges. (No proof of the arrests was offered at trial; the only evidence was a notation on a list of potential jurors). This court found that the trial court erred in accepting the prosecutor's reasons for striking a third African-American juror solely on the basis that he had served on a prior burglary case and returned a not guilty verdict when other jurors who were not excluded had served on the same jury. The prosecutor gave no other reason for striking the juror.
In the case at bar, Givens argues that some of the female jurors who were not struck appeared less favorable to the state than the male jurors who were struck. He lists particular women and their answers at voir dire. The trial judge refused to hear testimony about the women's answers at voir dire. Rather, he heard the prosecutor give answers as to why she struck six male jurors and was satisfied that her reasons were gender-neutral.
Givens now complains that several particular women who remained on the jury were much poorer choices than men who were cut; however, the prosecutor's notes do not so indicate. For instance, Ms. Lagattuta *336 wrote (respecting two potential jurors) "very good answers for rape case" by Ms. Dove's name and "great answers" by Ms. Guillory's name. The prosecutor's notes do not indicate her response to other potential female jurors. It is impossible to evaluate why a particular juror appeared favorable or unfavorable to a prosecutor seven years ago.
Next, Givens argues that the trial judge erred in not considering evidence that the prosecution's strikes were discriminatory on the basis of race.
When the Louisiana Supreme Court remanded this case, it instructed the trial court to set an evidentiary hearing at which the prosecutor would be required "to present gender-neutral reasons for the strikes;" the judge would then determine whether the defendant met his burden of proof. Thus, the issue of racial discrimination was not before the trial judge, and is not properly before this court.
Finally, Givens maintains that the judge erred in not allowing the defense to present evidence that the pattern of prosecution strikes demonstrated discriminatory intent. The Supreme Court noted that the pattern of strikes indicative of discrimination and remanded the case on that account. State v. Givens, p. 8, 776 So.2d at 451.
We find no merit in this assignment of error.

ASSIGNMENT OF ERROR NUMBER 3
Givens contends that the trial court erred in finding that the state proffered gender-neutral reasons for its strikes when the reasons were speculative and unsupported. He concedes that the burden of production is not great, but he faults the prosecutors for having no recollections of the actual voir dire and having no notes from that hearing. (Givens examines the reasons for striking each particular male juror in his next sequence of assignments; in this argument, he attacks the prosecutors' general failure to meet their burden of proof.) He maintains that the prosecutors used guesswork and fabrication in reconstructing their reasons for striking six male jurors.
At the J.E.B. hearing, both prosecutors referred to the contemporaneous notes taken during voir dire; additionally, Ms. Lagattuta had reviewed the transcript of the voir dire hearing. The prosecutors reconstructed their reasons for striking the six male jurors.
In Hernandez v. New York, 500 U.S. 352, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991), the Supreme Court addressed the intent of the prosecutor in explaining racial neutrality when it is challenged. During voir dire in that case, the prosecutor struck two Latinos and the defense objected. The prosecutor explained that he did not believe they could listen and follow the interpreter. The defendant appealed, arguing that the reasons for challenging the Latino jurors were not race-neutral. After the New York State court agreed with the state, the U.S. Supreme Court reviewed the case to examine the prosecutor's reasons for striking the men. It stated:
A court addressing this issue must keep in mind the fundamental principle that "official action will not be held unconstitutional solely because it results in a racially disproportionate impact.... Proof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause. [Citations omitted]. `Discriminatory purpose'... implies more than intent as volition or intent as awareness of consequences. It implies that the decisionmaker ... selected ... a particular course of action at least in part `because *337 of,' not merely `in spite of' its adverse effects upon an identifiable group."
A neutral explanation in the context of our analysis here means an explanation based on something other than the race of the juror. At this step of the inquiry, the issue is the facial validity of the prosecutor's explanation. Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral.
Id., 500 U.S. at 359-360, 111 S.Ct. at 1866 [Emphasis added].
The trial judge in the case at bar found that the prosecutor's reasons were facially valid in that they were not based on the sex of the juror. In Hernandez, the Supreme Court noted that the trial judge could ascertain the prosecutor's sincerity by his or her demeanor and stated, "[w]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." Id., 500 U.S. at 369, 111 S.Ct. at 1871, citing Anderson v. Bessemer City, 470 U.S. 564, 574, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985). The court recommended deference to the trial judge's findings because the judge is best able to evaluate the prosecutor's credibility.
Accordingly, we do not find that the judge erred in finding the state had offered gender-neutral reasons for its strikes of male jurors.

ASSIGNMENT OF ERROR NUMBER 4
In his next assignment of error, Givens argues that six male jurors were struck for pretextual reasons. In State v. Knighten, 609 So.2d 950, 954 (La.App. 4 Cir.1992), this court considered a Batson claim and stated the position of an appellate court in such an appeal:
This Court must ... determine whether the trial court applied the correct standards, properly weighed the facts and circumstances before it, and was not clearly erroneous in its finding that the prosecution's proffered explanations were reasonable, race-neutral, not a pretext, and legitimately related to the particular case.
Thus, the state's reasons for striking each of the six male jurors are examined below.

A. Wayne Harris

Both of the prosecutors testified as to the jurors. Michael Daniels, co-counsel at the trial of Givens, testified that he did not ask questions at the voir dire hearing; he took notes and prepared the jury sheets used to determine which jurors to select and which to cut. Mr. Daniels then read his notes on Mr. Harris: he was a forty-two year-old married warehouseman who served on prior juries that returned verdicts of lesser charges in possession of a firearm by a convicted felon and murder cases. Mr. Daniels noted that Ms. Lagattuta, lead counsel, had written "hard to read" about Mr. Harris and concluded that they had decided to strike Mr. Harris on that basis. When she testified, Ms. Lagattuta elaborated that "hard to read" meant "this person did not respond to me and ... to questioning. If they're hard to read, I don't keep them. It doesn't matter who they are."
Givens argues that Mr. Harris never gave any answers that supported the state's position that he was "hard to read." However, when asked if he could convict on the victim's testimony, Mr. Harris equivocated, as did several other jurors. All were struck. Prospective jurors Ms. Meyers-Reed, Ms. Gilbert, and Ms Robertson, as well as Mr. Harris, expressed hesitancy about determining guilt on the victim's testimony alone.
Givens cites State v. Ford, 26,422, p. 6 (La.App. 2 Cir. 9/21/94), 643 So.2d 293, 298, for the proposition that a subjective *338 evaluation, such as a prosecutor's "gut feeling," is not an adequate and neutral explanation of a strike. However, in the case at bar, the prosecutor did not focus on her own feeling, but rather she stated that the potential juror was "hard to read." When she struck all the potential jurors  male and female  who equivocated on the amount of evidence they would need to convict an alleged offender of rape, she demonstrated that her response was gender-neutral.

B. Allen Wilfred

Mr. Daniels testified that his notes on Mr. Wilfred showed that he was a forty-seven year-old married father of three; he was unemployed and had three arrests for municipal violations and one traffic arrest and conviction. Mr. Wilfred's brother had been a victim of a crime, and in another case, Mr. Wilfred stated that the state would have to produce the weapon used in the crime in order for him to vote to convict. Mr. Daniels commented that he would be concerned, first, with someone who had been arrested four times because Givens' case involved police testimony and, second, with someone who needed more evidence than legally required for conviction.
Ms. Lagattuta testified that, after reading the voir dire transcript, she recalled that Mr. Wilfred did not participate in the discussion with her or with the defense attorney. She also noted his criminal history and the fact that he was unemployed.
In his brief Givens correctly notes that criminal history taken from the National Crime Information Center ("NCIC") is not a legitimate basis for a strike.[6] He also argues that Mr. Wilfred's unresponsiveness is not born out by the record. However, that juror gave only monosyllabic answers to all questions. For one question, he did not answer but just shook his head; for another, he answered, "I think so."
In State v. Dabney, 91-2051 (La.App. 4 Cir. 3/15/94), 633 So.2d 1369, this court examined a Batson claim in which the prosecutor had struck several jurors because they were unresponsive and, citing State v. Knighten, 609 So.2d 950, 955 (La.App. 4 Cir.1992), noted that jurors had been dismissed because they were "non-verbal," "inattentive," "distracted," and "unresponsive." This court explained its holding as to certain jurors in the cases:
In effect, without any other evidence in the record, we deferred to the trial judge's reasonable discretion and his superior position in the courtroom. Although this is a close Batson issue, because of the ambiguity of the term "unresponsive," under the circumstances in this case, we do not find that the trial court erred in accepting the prosecutor's explanations as racially neutral.
Dabney, p. 10, 633 So.2d at 1376.
Similarly, in the case at bar, the prosecutor's explanation appears to be gender-neutral.

C. Nelson Sylve

Mr. Daniels testified that Mr. Sylve was a forty-one year-old married father of three who worked as a machinist. He had earlier served on a jury where he found a defendant charged with possession of a firearm by a convicted felon not guilty. That fact concerned Mr. Daniels.
Ms. Lagattuta reported that her notes indicated that Mr. Sylve discussed the use of DNA in the O.J. Simpson trial, and because DNA played a big part in the *339 upcoming trial she did not want Mr. Sylve on the jury. (The O.J. Simpson trial took place in the summer and fall of 1995, and this voir dire occurred in May of 1997). The defense maintains that Mr. Sylve did not mention the O.J. Simpson trial at voir dire. The transcript indicates that Ms. Lagattuta asked the potential jurors if anyone knew anything about DNA, and two jurors, a medical doctor and a Ph.D. scientist, responded positively. Mr. Sylve also raised his hand and stated that he had "the knowledge that came out during a trial." Ms. Lagattuta asked if he had any opinion of DNA because of the trial, and he answered, "Not directly. I don't know how the credibility of it all goes." Ms. Lagattuta then stated,
That was a little different, that case as opposed to this case. In this case, DNA  and I just want to say this to you, for a defendant to leave something in a woman's body is what they match on DNA as opposed to a homicide where they may be tracking blood or something else along the way that might be on a sign post or something else. It's a little different on this type of case. [Emphasis added].
The voir dire transcript indicates that Ms. Lagattuta assumed the conversation was about the Simpson trial even though that name was not used. The trial judge evidently found her sincerity convincing.

D. Jason Forest
Mr. Daniels testified that Mr. Forest was thirty years old and the single father of six children. He had been arrested for criminal neglect of family. Ms. Lagattuta had written that he was "inattentive." She commented that if he was inattentive during voir dire he would also be inattentive at trial.
Givens argues that nothing in the record supports the judgment that Mr. Forest was inattentive. However, in State v. Knighten, 609 So.2d at 955, this court addressed the same issue in a Batson claim and stated "it is not unconstitutional to exclude jurors for not being attentive or interested enough in the proceedings." When faced with such a claim, this court must defer to the trial judge who was "in the best position to know if this reason by the prosecutor had merit."

E. Norman Bartholomew

Mr. Daniels stated that Mr. Bartholomew  a fifty-year-old divorced father of two  worked as an auto mechanic. He had earlier served on a hung jury. Ms. Lagattuta had written "needs prints on weapon." She stated that she did not have any fingerprints from Givens. Also Mr. Bartholomew's nephew was a defendant in a second-degree murder case.
The defense argues that "needs prints" is pretextual.
At voir dire Ms. Lagattuta informed the veniremen of the state's burden of proof and asked, "If we prove the case against him, can you return a verdict of guilty as charged?" All the jurors answered positively except Mr. Bartholomew, who said, "if it's a weapon involved, I would like to see it." She next asked him if it mattered whether weapons were recovered or not, and he said it would matter. She then asked him if weapons were recovered did he need fingerprints, and he again answered positively. She finally said that if there were no fingerprints but a positive identification from the victims and with medical and scientific evidence supporting the defendant as perpetrator could he convict, and he answered that he could.
At the J.E.B. hearing, Ms. Lagattuta explained that no weapons had been found and she had no fingerprint evidence. Thus, Mr. Bartholomew's answers indicated that he would hold the state to a higher standard than the law required.

*340 F. Henry Jones
Mr. Jones was struck according to Mr. Daniels because he was extremely talkative and hated boring testimony. He had served on three prior juries, and in two, the verdict had been guilty as charged, but in the third, which was a kidnapping, the jury had found the defendant not guilty. Mr. Daniels noted that a rape case is similar to a kidnapping case, and that decision was of some concern. Ms. Lagattuta testified that she did not like jurors who were unresponsive or those who were overly responsive. She said she wanted "people right in the middle."
At the voir dire hearing, Ms. Lagattuta pointed out that the testimony in the case was detailed and scientific, and Mr. Jones responded that he found such testimony "extremely boring." Moreover, he spoke at length about the confusion he experienced when forced to listen to scientific or legalistic testimony.
The defense argues in this instance that the state accepted a man who said he "wouldn't want to deal" with testimony about mathematics. That argument is completely irrelevant, however. Mr. Jones was struck because he found it difficult to listen to detailed testimony and because he talked too much. Both reasons are gender-neutral.
We do not find that the trial court erred in finding the prosecutors' reasons gender-neutral. For the forgoing reasons, the trial court judgment is affirmed.
AFFIRMED.
MURRAY, J., concurs and assigns reasons.
MURRAY, J., concurs and assigns reasons.
The difficulty in this case, both for the trial court and for this court in reviewing the trial court, is the fact that we are trying to determine in 2003 if peremptory challenges exercised in 1997 were based on gender. The Supreme Court found that Mr. Givens had established a prima facie case of gender discrimination, and remanded for a hearing at which the State would present gender-neutral reasons for the peremptory strikes of potential male jurors.
The two assistant district attorneys testified, to the best of their recollection, as to the reasons that they decided to strike jurors, Harris, Wilfred, Sylve, Forest, Bartholomew and Jones, and counsel for Mr. Givens was allowed to cross examine on those reasons in an attempt to show that the stated reasons were a mere pretext. Although the trial court did not allow defense counsel to cross-examine the witnesses with regard to comparative treatment of the different jurors, I cannot say that the trial court erred when it determined that the peremptory strikes of the above six jurors were not based on gender.
I, therefore, agree that the decision of the trial court should be affirmed.
NOTES
[1] The objection was obviously intended to be made under J.E.B. v. Alabama ex rel. T.B., 511 U.S. 127, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994).
[2] Peremptory challenges are required by La. Const. art. I, § 17A.
[3] Givens filed a supplemental brief in which he reiterated his basic argument that the wrong standard of law was applied because the trial court did not properly evaluate the evidence in the light of the defense's arguments. He cites several additional cases, including State v. Collier, 553 So.2d 815 (La.1989); however, in that case, the trial judge considering Batson objections stated that the defendant "would not have a jury of his peers if the racial composition of the petit jury was disproportionate to the racial composition of the parish." Id., 553 So.2d at 821. The court found the judge applied the wrong standard for determining the validity of the prosecutor's reasons for challenging African-American jurors. While it is clear that the judge cannot merely "rubber stamp" the prosecutor's reasons, the judge's determination of purposeful discrimination is based on credibility evaluations that are entitled to great deference by a reviewing court. See Batson, 476 U.S. at 99, 106 S.Ct. 1712, n. 21.
[4] African-Americans were given detailed descriptions of how prisoners were put to death before being asked if they supported the death penalty. Caucasians were rarely given the preamble to the question.
[5] The prosecutor also said the juror lived in the neighborhood where the crime occurred.
[6] The defense cites 28 USC § 534(A)(e)(1) for the proposition that information from national crime information databases may be used only in domestic violence or stalking cases.